**Prepared By:**
**Michael Jones, CA Bar No. 271574**
**M. Jones & Associates, PC**
**505 North Tustin Ave, Suite 105**
**Santa Ana, CA 92705**
**Telephone: (714) 795-2346**
**Facsimile:    (888) 341-5213**
**Email:  mike@MJonesOC.com**
**Attorneys for Debtor**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In Re:

VANTAGE POINT APPAREL
SOFTWARE, INC.

Debtor and Debtor-in-Possession.

**In Chapter 11 Proceedings**

**Case No. 8:20-BK-10936-ES**

**SECOND AMENDED SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION DATED JANUARY 25, 2021**

Disclosure Statement Hearing
Date: 3/11/2020
Time: 10:30 AM
Crtrm: 5A

Plan Confirmation Hearing
Date:   May 20, 2021
Time:  10:30 AM
Crtrm: 5A

*(Note: Due to Covid-19 restrictions, the hearing may be conducted entirely by video or telephone. Parties are encouraged to check with the Court to see how the hearing will be conducted)*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 5

    A.   PURPOSE OF THIS DOCUMENT ................................................... 5

    B.   THE EFFECTIVE DATE OF THE PLAN ............................................ 6

    C.   DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION
       HEARING ................................................................................. 6

       1.   Time and Place of the Confirmation Hearing ........................ 7

       2.   Deadline for Voting For or Against the Plan ......................... 7

       3.   Deadline for Objecting to the Confirmation of the Plan ......... 7

       4.   Identity of Person to Contact for More Information Regarding the Plan 7

    D.   DISCLAIMER ........................................................................... 8

II.  BACKGROUND ................................................................................. 8

    A.   DESCRIPTION AND HISTORY OF THE DEBTOR ............................. 8

    B.   PRINCIPALS/AFFILIATES OF THE DEBTOR .................................. 10

    C.   MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE BANKRUPTCY ........ 10

    D.   EVENTS LEADING TO CHAPTER 11 FILING .................................. 10

    E.   SIGNIFICANT EVENTS ............................................................. 10

       1.   Bankruptcy Proceedings ................................................... 10

       2.   Other Legal Proceedings ................................................... 12

       3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers 12

       4.   Procedures Implemented to Resolve Financial Problems ................. 12

       5.   Current Financial Conditions .............................................. 12

III. SUMMARY OF THE PLAN OF REORGANIZATION ........................................ 13

    A.   WHAT CREDITORS AND INTEREST HOLDERS WILL RECEIVE UNDER THE PROPOSED
       PLAN ..................................................................................... 13

    B.   UNCLASSIFIED CLAIMS ............................................................ 13

       1.   Administrative Expenses .................................................... 14

       2.   Priority Claims Consisting of Taxes and Debts Owed to Governmental
           Units ................................................................................. 16

    C.   CLASSIFIED CLAIMS AND INTERESTS ......................................... 19

       1.   Classes of Secured Claims ................................................ 19

**2.    Classes of Interest Holders**................................................ 21

**3.    Classes of Interested Parties Without Claims**................................ 21

**4.    Classes of General Unsecured Claims** ......................................... 22

D.    MEANS OF EFFECTUATING THE PLAN ............................................................ 25

1.    Funding for the Plan................................................................ 25

2.    Post-Confirmation Management ............................................. 29

3.    Disbursing Agent................................................................... 30

E.    RISK FACTORS ...................................................................................... 30

F.    OTHER PROVISIONS OF THE PLAN ............................................................. 32

1.    Executory and Unexpired Leases ......................................... 32

2.    Protection of Creditors and Remedies in the Event Payments are Not Made ......................................................................................... 32

3.    Changes in Rates Subject to Regulatory Approval.............................. 34

4.    Retention of Jurisdiction.......................................................... 34

5.    Termination of Obligations in the event of Unprocessed Payments ... 34

6.    Settlement or Retention of Claims and Interests ................................ 35

G.    TAX CONSEQUENCES OF PLAN................................................................... 36

**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES.................................36**

A.    WHO MAY VOTE OR OBJECT.................................................................... 37

1.    Who May Object to Confirmation of the Plan....................................... 37

2.    Who May Vote to Accept/Reject the Plan ............................................ 37

3.    Who is Not Entitled to Vote .................................................... 39

4.    Who Can Vote in More Than One Class................................................ 39

5.    Use of Votes to Confirm the Plan........................................... 40

6.    Votes Necessary for a Class to Accept the Plan ................................. 40

7.    Treatment of Non-Accepting Classes .................................................. 41

8.    Request for Confirmation Despite Non-acceptance by Impaired Class(es) ..................................................................................................... 41

B.    LIQUIDATION ANALYSIS............................................................................... 41

C.    FEASIBILITY .......................................................................................... 42

**V.  EFFECTS OF CONFIRMATION OF PLAN .....................................................47**

A.    DISCHARGE .......................................................................................... 47

B.    REVESTING OF PROPERTY IN THE DEBTOR.................................................. 47

C.    MODIFICATION OF PLAN............................................................................ 47

D.    POST-CONFIRMATION STATUS REPORT ....................................................48

E.    POST-CONFIRMATION CONVERSION/DISMISSAL..........................................48

F.    FINAL DECREE ..........................................................................................49

# I.    Introduction

On 3/16/2020 (the "Petition Date"), Vantage Point Apparel Software, Inc.  ("the Debtor" or "the Proponent") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code and has elected to proceed under Subchapter V of Chapter 11. The debtor creates and maintains software for use in the apparel industry. The Debtor continues as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code.

Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan as set forth in this document you are reading; Subchapter V of Chapter 11 of Bankruptcy Code does not require a separate disclosure statement related to the Plan and therefore a separate disclosure statement has not been prepared.

This is a reorganization plan.  In other words, the Proponent seeks to accomplish payments under the Plan by restructuring the financial affairs of the Debtor and paying the creditors with post-petition earnings derived from revenue earned by the Debtor.

## A.    Purpose of This Document

This Chapter 11 Plan incorporates critical information relating to the Plan, including the effect of the plan on the various interested parties hereto (e.g., treatment of claims and collateral), and explains the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

    **(1)    WHO CAN VOTE OR OBJECT,**

    **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim**

**will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN CHAPTER 7 LIQUIDATION,**

**(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)     WHETHER THIS PLAN IS FEASIBLE.**

This document cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain specific advice regarding your treatment in this Plan.  Be sure to read the Plan carefully as your rights may be affected.

### B.     The Effective Date of the Plan

The Effective Date of the plan is the first day of the first full month that is at least 15 days following the entry of the confirmation order confirming this Chapter 11 Plan.

### C.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED HEREIN. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

1    **1.    Time and Place of the Confirmation Hearing**

2       The hearing where the Court will determine whether or not to confirm the Plan will take

3   place before the Honorable Erithe Smith in Courtroom  of the U.S. Bankruptcy Court located at

4   411 W Fourth Street, Santa Ana, CA 92701 on TBD at TBD.

5

6    **2.    Deadline for Voting For or Against the Plan**

7       If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

8   and return it to Michael Jones of M. Jones & Associates, PC, through his email at

9   mike@MJonesOC.com and his fax number 888-341-5213.  Your ballot must be received by

10  TBD or it will not be counted.

11   **3.    Deadline for Objecting to the Confirmation of the Plan**

12      Objections to the confirmation of the Plan must be filed with the Court and served upon

13  Debtor's counsel and all other parties required by local Court rule by TBD.

14

15

16   **4.    Identity of Person to Contact for More Information Regarding the Plan**

17      Any interested party desiring further information about the Plan should contact Debtor's

18  counsel, Michael Jones, whose contact information is provided in detail in Para. 2 above. His

19  telephone number also is 714-795-2346.

20

21      The mailing address for Debtor's counsel is below:

22                          M. Jones and Associates, PC
                            Attn. Michael Jones
23                          505 N Tustin Ave, Ste 105
                            Santa Ana, CA 92705
24

### D.    Disclaimer

The financial data relied upon in formulating the Plan is based on Debtor's MOR reports filed each month on the Court docket and Debtor's Post-Petition Statement of Income and Expenses which is attached hereto as Exhibit A.

The information contained in this Chapter 11 Plan has not been audited or reviewed by an independent accountant and the Debtor is unable to warrant or represent that such information (financial or otherwise) is without any inaccuracies.  The Debtor believes that the Debtor has made reasonable efforts, under the circumstances, to present fairly and accurately, such information and that to the best of their respective knowledge, everything stated herein is true.

The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    Background

### A.    Description and History of the Debtor

In July of 2003, the Debtor was formed through incorporation here in the State of California.  The only shareholder and principle of the debtor has always been Mr. Lonnie Tee.

Aside from being the only shareholder and principle of the debtor, Mr. Tee is also a debtor in his own personal Chapter 13 bankruptcy case—*In re Lonnie M Tee*, United States Bankruptcy Court for the Central District of California, Case Number 8:19-bk-14950-ES.  He is currently performing under the terms of the confirmed Chapter 13 Plan in his personal case.  His Chapter 13 case is currently funded by his income from the Debtor, Vantage Point, as well as Social Security income he recieves.  While the Vantage Point plan is underway, Mr. Tee and his wife will *both* be receiving Social Security income in the combined amount of approximately $5,000

1    per month to use toward his Chapter 13 obligations.  A copy of his Chapter 13 Plan and the

2    related confirmation order is attached to the disclosure statement as Exhibit H.

3            The Debtor is a software company that creates software for use in the apparel industry.

4    The debtor has developed a base software package that is used for wholesale sales and

5    manufacturing of apparel.  For each client of the Debtor, the base package is customized and

6    tailored for their specific needs.  The Debtor as four employees—Mr. Tee  (who handles the

7    administrative needs of the Debtor, sales, and system design), another employee that does system

8    design and customer support, another that provides programming services, and another that does

9    online training.  The Debtor's gross revenue has varied in the five years prior to its bankruptcy

10    filing between a low of $620,000 in 2019 and a high of $840,000 in 2015; the average annual

11    gross revenue over this five year period was $760,000.

12            Many years ago, the Debtor began to get off track with its tax obligations – primarily

13    payroll taxes, but some corporate income taxes.  These tax obligations continued to grow, year

14    after year, until it grew to more than $1 million.  Finally, within the six months prior to the filing

15    of the bankruptcy petition, the IRS began making increasingly threatening moves toward

16    aggressively collecting the past due obligations.

17            Meanwhile, the Debtor's business was undergoing a transformation to accommodate the

18    changing business reality of doing things through the internet and moving away from "stand-

19    alone" computer systems.  As the industry needs were changing, the Debtor needed to adapt its

20    software and business practices to be more "online" and "cloud-based".  Revising its product

21    offerings, the Debtor now offers its client base a choice between in-house servers or "cloud-

22    based" systems.

23            Regarding its own business model, the Debtor has now converted itself to an entirely

24

"cloud-based" business.  Previous office spaces have been vacated and now all of its employees are working from home offices through "tele-commuting".  As such, the Debtor holds no interest whatsoever in real estate and very little in way of tangible assets.

Currently, the Debtor has transformed itself into running much more "lean", and should be able to produce enough profits to pay its required tax liabilities over no more than a 60 month period.  Additional creditors will be paid as much as possible and surely significantly more than they would be paid in a Chapter 7 case.

**B.    Principals/Affiliates of the Debtor**

Lonnie Tee is the only principle of the Debtor.  He is the sole shareholder and director of the Debtor.

**C.    Management of the Debtor Before and After the Bankruptcy**

Lonnie Tee handles the management needs of the Debtor.

**D.    Events Leading to Chapter 11 Filing**

The events leading to the filing of the Chapter 11 case are incorporated into the narrative above.

**E.    Significant Events**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events that have occurred <u>during</u> this case:

| Date | Event |
|------|-------|
| • March 17, 2020 | Chapter 11 voluntary petition filed |

| | | |
|---|---|---|
| • | March 18, 2020 | Deadline to File Proof of Claim established as 5/26/2020 |
| • | March 19, 2020 | Notice of Deadline to File Proof of Claim served on entire mailing matrix by BNC |
| • | March 31, 2020 | Notice of Setting Insider Compensation authorizing Lonnie Tee's compensation filed in the case |
| • | March 31, 2020 | The IRS files its claim in the case ($106k secured; $446k priority; $911k general unsecured) |
| • | April 8, 2020 | Motion to employ debtor's counsel filed; the motion is granted |
| • | April 8, 2020 | The 341 creditor meeting is conducted; no creditors participated |
| • | April 29, 2020 | The Franchise Tax Board files its claim in the case ($2.7k priority; <$1k general unsecured) |
| • | August 26, 2020 | The IRS amends its claim in the case ($106k secured; $453k priority; $911k general unsecured) |
| • | May 5, 2020 | Ap City View files a claim in the case ($12k) |
| • | May 12, 2020 | A Status Conference is held in the case and a deadline to file a Plan and Disclosure Statement is set as August 14, 2020 |
| • | July 23, 2020 | A Status Conference is held in the case and a deadline to file a Plan and Disclosure Statement is extended to October 15, 2020 |
| • | September 3, 2020 | A Status Conference is held in the case and the Debtor is given a deadline of October 15, 2020 to file a disclosure statement and plan. |
| • | October 14, 2020 | The Debtor files a proposed Chapter 11 Plan and Disclosure Statement |
| • | November 27, 2020 | The Subchapter V Trustee files an objection to the Debtor's proposed Disclosure Statement |
| • | November 30, 2020 | The United States Trustee files an objection to the Debtor's proposed Disclosure Statement |

- December 9, 2020        The Debtor withdraws its Chapter 11 Plan and Disclosure Statement and advises it will submit a revised plan that addresses the filed objections

## 2.    Other Legal Proceedings

There are no relevant non-bankruptcy events involved in this proceeding.

## 3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor has done an analysis and does not believe that there are any preferential or fraudulent transfers to be pursued at this time.

## 4.    Procedures Implemented to Resolve Financial Problems

The deal with the problems that led to the Debtor's filing, the Debtor now has a tax professional working with it to ensure that it remains in compliance with its obligations.  Also, its payroll taxes are now being processed by a payroll service (e.g., ADP or Paychex) that does all the returns timely and escrows payments to ensure they are timely.

## 5.    Current Financial Conditions

The Debtor has continued in operations since the filing of the Chapter 11 petition in March 2020.  Throughout the 2020 year, the Debtor's sales began the year with over $50,000 a month in income, and declined thereafter as a result of the COVID-19 pandemic.  Income continued to decline through June 2020 where it appears to have "bottomed out" with a very low monthly income of $15,000.  For December 2020, the last full month available at the time this Chapter 11 Plan and Disclosure Statement is being prepared, the Debtor has income of slightly

over $62,000.  As shown in the graphic chart below, the receipts of the Debtor are now on an

upward trend:



The identity and fair market value of the estate's assets are contained with Schedules A

and B of the Debtor's bankruptcy petition, which are included within Exhibit B.  See also the

Debtor's financial history is set forth in Exhibit D.

## III.    Summary of the Plan of Reorganization

### A.    What Creditors and Interest Holders will receive under the Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various

classes according to their right to priority. The Plan states whether each class of claims or

interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified.

1  They are not considered impaired and they do not vote on the Plan because they are

2  automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such,

3  the Proponent has not placed the following claims in a class.

4

5          **1.    Administrative Expenses**

6          Administrative expenses are claims for costs or expenses of administering the Debtor's

7  Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all

8  administrative claims be paid on the Effective Date of the Plan, unless a particular claimant

9  agrees to a different treatment.

10         The Court must rule on all professional fees listed below before the fees will be owed.

11 For all fees, except Clerk's Office fees and U.S. Trustee's fees, the professional in question must

12 file and serve a properly noticed fee application and the Court must rule on the application. Only

13 the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

14         All of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan

15 are listed below:

16

17         **Debtors' Counsel- M Jones & Associates, P.C.**

18         NOTE: The estimated amount due to Debtor's Counsel stated below is a good faith

19 estimation of the total fees to be incurred through confirmation of the Chapter 11 plan.  The

20 actual amount could be more or less, and is subject to approval through a final fee application.

21         The Debtor is estimated to owe a total of $50,000 to the law firm of M Jones &

22 Associates, P.C.,  on the Effective Date that qualifies for treatment under 11 U.S.C. 507(a)(1) as

23 an administrative claim. The claim, in an amount to be proven by an approved fee application,

24 will be paid by monthly installments over the first 60 months of the plan, without interest,

provided that payments are made as provided herein.  The total annual payments to be paid monthly over the term of the are as follows:

- Year 1 of the Plan - $6,000, paid evenly at monthly intervals

- Year 2 of the Plan - $6,000, paid evenly at monthly intervals

- Year 3 of the Plan - $6,000, paid evenly at monthly intervals

- Year 4 of the Plan - $15,000, paid evenly at monthly intervals

- Year 5 of the Plan - $17,000, paid evenly at monthly intervals

If the Subchapter V Trustee administrative expenses are not paid in full at the time the fees are approved by the Court, Debtor's payments of the Debtor's Counsel administrative expenses will not begin until the Subchapter V Trustee fees have been paid.

## **Subchapter V Trustee Expenses**

Subchapter V of Chapter 11 of the Bankruptcy Code provides that a Chapter 11 Trustee is appointed in the case with specific duties and obligations as set forth within the Subchapter V. The Chapter 11 Trustee is entitled to be paid for their services in the case, and payment will therefore be made by the Debtor as they are approved and authorized by the Court.

In good faith, the Debtor anticipates that a Chapter 11 Trustee fee will not be more than $30,000.00 as of the Effective Date of the Plan.  If the Debtor has sufficient funds on hand to pay these the approved fees at the time of their approval by the Court, payment will be made upon Court approval.  However, if the Debtor does not have sufficient funds to pay the approved fees in full at the time they are approved by the Court, the Debtor will pay the obligation by monthly

installments over no more than the first 36 months of the plan.  The total annual payments to be paid monthly over the term of the are as follows:

- Year 1 of the Plan - $6,000, paid no less than $500 per month

- Year 2 of the Plan - $12,000, paid no less than $1000 per month

- Year 3 of the Plan - $12,000, paid no less than $1000 per month

In the event a payment is not made as provided, the balance remaining due at the time of the missed payment will accrue interest at 18% per annum (or the maximum rate legally permitted, whichever is less) until paid in full.

### 2.   Priority Claims Consisting of Taxes and Debts Owed to Governmental Units

Priority claims consisting of taxes and debts owed to governmental units are certain unsecured taxes, custom duties, and penalties owing to federal, state, and local governmental units involved in this proceeding are set forth by 11 U.S.C. § 507(a)(8).  The Code requires that each holder of a § 507(a)(8) priority claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of filing of the Order for Relief.

Section 507(a)(8) also refers to property tax debt incurred before the commencement of the case and last payable without penalty after one year before the petition date. 11 U.S.C. 507(a)(8)(B).

## Section 507(a)(8) Governmental Unit Tax Claims

All of the Debtor's § 507(a)(8) priority claims and their treatment under the Plan are listed below.  These claims may ultimately be wholly or partially disallowed through amendment of claim or an objection to claim.  The total amount owed to governmental units entitled to priority treatment will be administered under the plan as follows:

**Internal Revenue Service Claims**

The Debtor owes a total of $453,632.12 to the Internal Revenue Service that qualifies for treatment under 11 U.S.C. 507(a)(8) as a priority claim.  The claim will be paid through monthly installments that escalate over the first 52 months following the Effective Date, and will be paid interest at the statutorily required rate.  A complete amortization schedule that shows the amount of each payment is attached hereto in Exhibit F (the chart assumes an Effective Date of 6/1/2021 and may need to be adjusted if the actual date differs).

Payments 1 through 12 for the IRS §507(a)(8) claim are in the monthly installment amount of $6,000.60, which when combined with the IRS Class 2 payment on its secured claim, provides the IRS a total combined monthly payment of $8,008.78 through the first year of the plan.

Payments 13 through 24 for the IRS §507(a)(8) claim are in the monthly installment amount of $7,291.60, which when combined with the IRS Class 2 payment on its secured claim, provides the IRS a monthly payment of approximately $9,300.78 through the second year of the plan.

Payments 25 through 36 for the IRS §507(a)(8) claim are in the monthly installment amount of $10,416.60, which when combined with the IRS Class 2 payment on its secured

1    claim, provides the IRS a monthly payment of approximately $12,426.78 through the third year

2    of the plan.

3            Payments 37 through 48 for the IRS §507(a)(8) claim are in the monthly installment

4    amount of $14,166.60, which when combined with the IRS Class 2 payment on its secured

5    claim, provides the IRS a monthly payment of approximately $16,177.78 through the fourth year

6    of the plan.

7            Payments 49 through 51 for the IRS §507(a)(8) claim are in the monthly installment

8    amount of $16,060.60, which when combined with the IRS Class 2 payment on its secured

9    claim, provides the IRS a monthly payment of approximately $18,072.78 at the beginning of the

10   fifth year of the plan.

11           One final payment for the IRS §507(a)(8) claim will be due in month 52 of the plan in the

12   amount of $13,316.11 which will conclude the full payment of the IRS §507(a)(8) claim.

13

14           **California Franchise Tax Board Claims**

15           The Debtor owes a total of $2,739.15 to the California Franchise Tax Board that qualifies

16   for treatment under 11 U.S.C. 507(a)(8) as a priority claim.  The claim will be paid through

17   monthly installments of $56.75 for the first 54 months following the Effective Date, and will be

18   paid interest at the statutorily required rate.

19

20           **California Employment Development Department**

21           The Debtor scheduled a disputed obligation to the California Employment Development

22   Department in the amount of $95,249.85 that, if an allowed claim, would qualify for treatment

23   under 11 U.S.C. 507(a)(8) as a priority claim.  The claim remains disputed because payment is

24

being made on this claim by the interest holder in this proceeding, Mr. Lonnie Tee, in his

personal capacity.  As such, while the claim remains disputed in this proceeding and is thus

classified within Class 3, if the claim is ultimately allowed, it will be paid in full directly by Mr.

Lonnie Tee through his personal confirmed Chapter 13 Plan that currently provides for its

payment.

### C.    Classified Claims and Interests

#### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.

**Class 1: Claims Secured on Property other than Real Property.**

The Debtors will the treat the Class 1 Secured Claim on the terms set forth below:

## CLASS: 1

**DESCRIPTION:**

*Class Description:*  Secured claim of Internal Revenue Service

*Collateral description:* all of Debtor's right, title and interest to property pursuant to 26 U.S.C. §6321 (hereinafter "the Debtor's Property")

*Priority of security interest:* first priority lien on the Debtor's Property

*Collateral value:* $106,415.00

*Amount of secured claim as of 3/17/2020:* $106,415.00

**INSIDER:** No

**IMPAIRED:** Yes

**TREATMENT:**

The amount of the allowed secured claim of Internal Revenue Service (hereinafter "IRS") secured by the first priority lien on the Debtor's Property shall be in the amount of $106,415.00 (hereinafter the "IRS Secured Claim"), or such lessor amount as appropriate to account for payments or other reductions on the claim that may have otherwise been applied against the obligation.

The IRS Secured Claim shall be paid as follows: All tax lien documents relating to the indebtedness owing to IRS secured by the first priority lien on the Debtor's Property (the "IRS Secured Obligation") and the security thereof (collectively, the "IRS first priority lien Documents") shall remain in full force and effect in accordance with statutory and administrative provisions (e.g., IRS regulations) except as provided herein. In the event of a conflict between the terms stated herein, and the IRS first priority lien Documents related to the parties, the terms herein shall control.

The claim amount of $106,415.00 due on the IRS Secured Obligation will be paid over 60 months, at 5% interest per annum, with monthly intervals of one payment due per interval, beginning on first day of the first full month following the Effective Date, starting on the first day of the first full month following the Effective Date, and ending on 60th Payment, resulting in the claim being paid in full during the payment term. As such, the claim shall be paid as follows:

> *Pymt interval=* monthly
> *Pymnt amt/internal=* $2,008.18
> *Begin date=* first day of the first full month following the Effective Date
> *End Date=* 60th Payment
> *Interest Rate % =* 5.00%
> *Total Payout % =* 100.00%

A simple amortization table reflecting the terms of the claim, when fully amortized, is attached hereto as Exhibit F.

Once the Debtor has fully performed all the obligations under the Plan for treatment of the IRS Secured Claim, IRS shall release any and all liens it is holding against the Debtor's Property related to the IRS Secured Claim of IRS, as well as all other assets of the Reorganized

Debtor and IRS shall have no further claims against the Debtor and the Reorganized Debtor related under the IRS first priority lien Documents.

## 2.    Classes of Interest Holders

**Class 2: Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

In this proceeding, the Debtor is an corporation with only one shareholder— Mr. Lonnie Tee.  Therefore, Mr. Lonnie Tee is the interest holder.

## 3.    Classes of Interested Parties Without Claims

**Class 3: Disputed, Contingent, and Unliquidated Claims.**

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MAY 26, 2020. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Pursuant to 11 USC 1111(a), those claims or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in their petition and schedules are treated as unfiled claimed unless the creditor filed a claim in the case on or before the Claims Bar Date.

1    Class 3 members do not have allowed claims in this bankruptcy proceeding.

2    Accordingly, pursuant to Federal Rules of Bankruptcy Procedure Rule 3003(c)(2), those claims

3    or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in their

4    petition and schedules shall not be treated as a creditor for purposes of voting and distribution.

5    Creditors and interest holders in Class 3, if any, are listed in Exhibit E, and are subject to

6    having their debts and interests discharged under 11 USC 1141 without receiving any

7    distribution under the Chapter 11 Plan.

8    **Parties in Class 3 may not seek any payment or engage in any collection activity**

9    **whatsoever from the Debtor on their alleged debt for any reason whatsoever for a period of**

10    **60 months following the Effective Date, conditioned upon the Debtor making payments as**

11    **required under the terms of the Chapter 11 Plan.** This restriction is to ensure that the Debtor

12    is able to perform under the terms of the Chapter 11 Plan in funding 60 months of payments for

13    the benefit of the allowed claims belonging to secured and unsecured creditors in the case,

14    without having to defend against claims that were not filed in the Debtor's bankruptcy case.

15

16    **4.    Classes of General Unsecured Claims**

17

18    **Class 4: General Unsecured Claims**

19    General unsecured claims are unsecured claims not entitled to priority under Code

20    Section 507(a). Class 4 is impaired under the Plan. See Exhibit E for detailed information about

21    each general unsecured claim, including the Class 4 member's identity and the amount of each

22    member's claim.

23    //

24    //

## *TREATMENT FOR CLASS 4 MEMBERS*

This treatment allows Class 4 members to be paid a dividend of 2.9% of their allowed claims, with quarterly payments for 60 months following the Effective Date, in the escalating quarterly amounts as described herein after.  Each class member will be paid on a *pro rata* basis together with all other members of Class 4.  In other words, each Class 4 member will be distributed its share of the whole quarterly distribution in proportion to its share of the total of Class 4 claims.

The Debtor will increase its quarterly payments to Class 4 members as the plan progresses and the Debtor's projected sales increase from year to year as shown in the chart below:

| Year of the Plan | Annual Distribution Amount to Class 4 | Quarterly Distribution Amount to Class 4 |
|---|---|---|
| Year 1 (Q1-Q4) | $3,000 | $750 |
| Year 2 (Q5-Q8) | $4,500 | $1,125 |
| Year 3 (Q9-Q12) | $5,500 | $1,375 |
| Year 4 (Q13-Q16) | $6,500 | $1,625 |
| Year 5 (Q17-Q20) | $7,500 | $1,875 |
| | _____ | |
| **TOTAL DISTRIBUTION** | **$27,000** | |

## *Incentive to Vote in Favor of Plan and Creation of Class 4 Incentive Fund:*

If this Chapter 11 Plan is not confirmed with the consent of the creditors pursuant to 11 U.S.C. §1191(a), and confirmation is obtained under the provisions of 11 U.S.C. §1191(b), the

1   Chapter 11 Trustee will act as the payment conduit to distribute payments under the Plan.  This

2   will create an expense for the Debtor that can be avoided if the plan is confirmed as a "consent

3   plan" pursuant to 11 U.S.C. §1191(a).

4       Furthermore, the costs and expenses involved in obtaining confirmation under Section

5   1191(b) (commonly known as "cram down" and discussed further *infra*) are avoided if the

6   creditors consent to confirmation.  This too will result in more funds being available for

7   distribution to the general unsecured creditors.

8       Accordingly, to encourage the Class 4 creditors to vote in favor of the plan, if and only if

9   the Plan is confirmed under Section 1191(a) of Title 11 (i.e., with the consent of the creditors),

10  all creditors within Class 4 will receive an additional payment as provided herein.

11      In the event that the Plan is confirmed under Section 1191(a) of Title 11, the Debtor will

12  create a distribution fund of $25,000 (referred to herein as "Class 4 Incentive Fund") in year 5 of

13  the plan.  All Class 4 creditors will then receive an additional distribution from the Class 4

14  Incentive Fund on a *pro rata* basis derived from the valuation of said creditor's allowed claim as

15  of the Effective Date.  Distribution of the Class 4 Incentive Fund will be made to creditors as

16  provided herein no later than 60 months following the Effective Date.

17      These payments will ensure that the general unsecured creditors will receive no less than

18  2.9% of the allowed claims.  If the Plan is confirmed as a "consent plan" pursuant to 11 U.S.C.

19  §1191(a), an additional $25,000 will be paid to the Class 4 creditors, providing them with 5.5%

20  of their allowed claims.

21

22

23

24

1

**D.     Means of Effectuating the Plan**

2

**1.     Funding for the Plan**

3

The funding of the Plan will be accomplished through "available cash" on the Effective

4

Date of the Plan and "future disposable income" obtained through the Debtor's business

5

activities.

6

Because the COVID-19 situation has had such a dramatic impact on the financial affairs

7

of businesses worldwide, including the Debtor, significant detail about the income of the Debtor

8

is provided.  The numbers provided herein are provided in rounded numbers.  The income stated

9

is through December 2020, the last Monthly Operating Report filed in the case.  Projections are

10

also provided for each of the five years of the Plan below.

11

Historically, the Debtor's sales have been in the high hundred-thousands, but less than a

12

million dollars.  Leading up to the filing of the petition, the Debtor's annual income as shown on

13

its annual 1120 Federal Tax filings was $829,000 in 2018 (the Debtor's most recent year with a

14

filed tax return), $804,000 in 2017, $707,000 in 2016, and $840,000 in 2015.  The Debtor further

15

advises that its annual income for 2019 was approximately $620,000.

16

The chart below shows the Debtor's annual income in the years leading up to the Chapter

17

11 bankruptcy filing:

18

//

19

//

20

//

21

//

22

//

23

//

24



For the 2019 fiscal year, the Debtor's sales were $200,000 less than the prior year.  The

Debtor had come to the realization that in order for the Debtor to maximize its competitive edge

in its marketspace, it needed to innovate its product offerings.  As such, the Debtor reallocated

much of its sales staff to Research and Development throughout 2019.  As expected, the sales

were reduced, but the new product line was largely developed and has only recently come online

with the Debtor.  On top of this, the 2019 year impacted the Debtor's customers that were

exporting from China due to tariffs that went into effect from the "trade war" with China.  The

Debtor advises that but for the COVID-19 pandemic, 2020 would have been more in line with

the previous years of more than $800,000 in annual income.

For 2020, the Debtor's sales began the year with over $50,000 a month in income, and

declined thereafter as a result of the COVID-19 pandemic.  Income continued to decline through

June 2020 where it appears to have "bottomed out" with a very low monthly income of $15,000.

For December 2020, the last full month available at the time this Chapter 11 Plan and Disclosure

Statement is being prepared, the Debtor has income of slightly over $62,000. As shown in the graph chart below, the receipts of the Debtor are on an upward trend:



NOTE: The Debtor's sales were less in September 2020 than the prior month of August 2020. This was because a key employee of the Debtor was directed impacted by COVID-19, including hospitalization, and was not able to work for a large part of September. The Debtor anticipates that its sales were approximately $7,500 less because of delayed work that could not be done due to the non-typical COVID-19 circumstances of its employees. As such, September's income of approximately $42,000 is an aberration and not typical or normal. The Debtor's income after this aberition in September continued with its upward trend while adjusting to COVID-19 circumstances.

The forward projections for each year of the five year plan are provided in the chart below. The numbers are derived from the historical trend since January 2020 and the Debtor's knowledge of its industry and its recovery from the COVID-19 circumstances. The reader

should note that this projection is given in good faith by the Debtor, but because it is future

looking there can be no guarantee that these numbers will actually occur.



As shown in the chart, the Debtor projects its annual income as gradually rising over

several years until the goal economy returns to its pre-COVID-19 levels.  The table below shows

the historical income of the Debtor, and the projections for future income growth of the Debtor:

| Year | Actual Historical Revenue | Projected Revenue |
|------|---------------------------|-------------------|
| 2015 | $ 840,000.00 | |
| 2016 | $ 707,000.00 | |
| 2017 | $ 804,000.00 | |
| 2018 | $ 829,000.00 | |
| 2019 | $ 620,000.00 | |
| 2020 | $ 498,000.00 | |
| 2021 | | $ 660,000.00 |
| 2022 | | $ 720,000.00 |
| 2023 | | $ 780,000.00 |
| 2024 | | $ 840,000.00 |
| 2025 | | $ 850,000.00 |

1

2          The Debtor believes that things will be vastly better moving forward for two reasons.

3   First, the Debtor's new products developed in 2019 have now come online for the Debtor, thus

4   increasing its offerings and sales.  Second, the Debtor's customer base has begun to return to

5   some sense of "ordinary" and the use of the Debtor's product has increased significantly.  The

6   anticipation of the Debtor is that it will be back to some semblance of normal around three or

7   four of the plan (show on the chart as years 2023 and 2024).

8          If the Debtor finds itself in a position where it needs to reduce its expenses in order to pay

9   the increasing obligations under the plan, either because sales did not increase as projected or

10  otherwise, it can do so.  Lonnie Tee's wife can assume the position that is currently occupied by

11  an employee of the Debtor, thereby dramatically reducing the expenses of the Debtor.  If Lonnie

12  Tee's wife was to assume this position, it would reduce the expenses of the Debtor by

13  approximately $60,000 per year.  This *could* be done, but it is not the best course of action as it

14  would result in the loss of talent for the Debtor.  However, it is possible in the event of a dire

15  need to reduce expenses in order to perform under the plan.

16         The Class 4 Incentive Fund described within the Class 4 Treatment *supra* will be funded

17  from the increased sales in years three through five, after the global economy is projected to

18  recover from the COVID-19 global disaster.

19

20                    **2.        Post-Confirmation Management**

21         The Debtor shall remain in possession of the Debtor's assets, and shall perform all

22  functions necessary to consummate the Plan, including the operation of Debtor's business

23  activities, post-confirmation.

24

### a)  Disclosure of 11 U.S.C. §1129(a)(5)(A) individuals

After the Chapter 11 Plan is confirmed, Mr. Lonnie Tee will continue to serve as the only officer and director of the Reorganized Debtor.

### b)  Disclosure of 11 U.S.C. §1129(a)(5)(B) insiders

The only insider that will be employed, post-confirmation, by the Reorganized Debtor will be Mr. Lonnie Tee.  He will be compensated at the rate of $13,000 per month throughout the first year of the Plan.  His compensation increases to $13,333 per month for year two of the Plan, $13,750 for year three of the Plan, $14,094 for year four of the Plan, and $15,333 for year five of the Plan.

### 3.  Disbursing Agent

If the Plan is confirmed pursuant to 11 U.S.C. §1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan.  The disbursing agent shall serve without bond and shall not be compensated for distribution services rendered and expenses incurred pursuant to the Plan.

If the Plan is confirmed pursuant to 11 U.S.C. §1191(b), the Chapter 11 Trustee will act as the disbursing agent under the Plan as provided by Title 11, except for secured creditors, which shall be paid directly by the Debtor.

### E.  Risk Factors

This Chapter 11 plan contain numerous forward-looking statements and assumptions. These forward-looking statements are subject to known and unknown risks, uncertainties and other factors that may cause actual results, performance or achievements to be materially different from those expressed or implied by the forward-looking statements.

1        Factors that could cause actual results to differ materially from these forward looking

2  statements include, but are not limited to, the following general factors such as: (i) there can be

3  no assurance that the business activities will produce the gross revenue projected, (ii) there can

4  be no assurance that the actual monthly net income will continue at the amounts stated, (iii) the

5  Debtor may be unable to confirm and consummate the Chapter 11 plan of reorganization, (iv) the

6  risks associated with operating under Chapter 11 protection, (v) the ability of the Debtor to

7  comply with the terms of the Chapter 11 plan , (vi) the risk factors or uncertainties listed from

8  time to time with the U.S. Bankruptcy Court in connection with the Chapter 11 filing, (vi) the

9  Debtor may be unable to implement and fund the plan and income generating strategies based on

10  current liquidity, (vii) the Debtor may be unable to obtain new financing for secured obligations

11  prior to the balloon payments or potential accelerated obligations becoming due, if any,  (viii) the

12  Debtor's substantial debt and debt service requirements may restrict the Debtor's operational and

13  financial flexibility, (ix) there may be future litigation proceedings currently unknown to the

14  Debtor that could have a material adverse effect on the Debtor and the Debtor's income

15  generating ability, (x) competitiveness of the Debtor's industries, (xi) regulatory risks and

16  uncertainties could affect the Debtor's ability to earn income or generate profits, (xiv) general

17  economic conditions, (xv) the risk that the future disposable earnings of the Debtor are less than

18  anticipated, including the risk that growth doesn't occur as projected, and therefore the net

19  disposable monthly income may be insufficient to service the monthly payments to the creditors,

20  and (xvi) other risks that may not be known to the Debtor.

21  //

22  //

23  //

24

## F.    Other Provisions of the Plan

### 1.    Executory and Unexpired Leases

#### a)    Assumptions

The Debtor is unaware of any lease or executory contract to which the Debtor is obligated as lessee other than perhaps routine office equipment such as copiers arising in the ordinary course of business.  Debtor reserves the right to supplement this assumption list on proper notice to the counter party to such agreement(s).

#### b)    Rejections

There are no executory contracts or unexpired leases which will be rejected in this proceeding.

### 2.    Protection of Creditors and Remedies in the Event Payments are Not Made

Section 1191 of Title 11 requires that the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made as required under the terms of the Plan.

#### a)    Provisions for Secured Creditors

If the Debtor does not make payments as required under the plan, secured creditors may proceed with any remedy permitted by state or federal law to recover against their collateral.

#### b)    Provisions for Unsecured Creditors

To protect the unsecured creditors, the assets of the Debtor will not revest in the Debtor until the completion of the 60 month plan. This will allow for equal treatment of all unsecured creditors from the assets of the Debtor if the case is converted to a liquidation proceeding under

Chapter 7 of the Bankruptcy Code.

### c)    Notice of Default and Opportunity to Cure Required

In the event of any material default of the provisions of this Plan, a creditor or other party in interest aggrieved by such default may provide written notice to the Reorganized Debtor and to the Subchapter V Trustee (a "Default Notice"). The Default Notice must describe with specificity the nature of the default alleged and the steps required of the Debtor (or, if applicable, the Subchapter V Trustee) to cure such default.

The Reorganized Debtor (or, if applicable, the Subchapter V Trustee) shall have thirty (30) days after receipt of a written Default Notice to cure such default. The aggrieved Person shall take no further action until at least thirty (30) days have passed and the Debtor (or, if applicable, the Subchapter V Trustee) has not cured or substantially complied with the Default Notice. Even after the thirty (30) day period has expired, the Reorganized Debtor (or, if applicable, the Subchapter V Trustee) may cure a default at any time, even after an application or motion has been filed by an aggrieved party.

If the Reorganized Debtor defaults in its obligations under the Plan, and after the required notice and opportunity to cure, the default remains uncured, the aggrieved party may bring the matter before the Bankruptcy Court, and the Court may thereafter permit the aggrieved party to proceed with its state law remedies or provide such other relief at the Court's discretion.

Notwithstanding the above, the Subchapter V Trustee is not required to provide the Debtor with a Default Notice before acting on a plan default.

### d)    Retention of Property in the Estate.

The Bankruptcy Code provides that upon confirmation, except as otherwise provided in the plan or the order confirming the plan, the property of the estate vests in the Debtor.  This

Chapter 11 Plan contains such an exception.

Upon confirmation, the property of the estate will not vest in the Debtor until completion of the 60 month plan.  The Debtor may continue to use the estate property without restriction in the same normal and ordinary way it would be used by an entity in the Debtor's industry and trade, however, the Debtor may not encumber, transfer, convey any interest of, or sell the estate property without approval of the Court pursuant to a noticed motion under 11 U.S.C. §363.

### 3.    Changes in Rates Subject to Regulatory Approval

This provision is not applicable in this proceeding.

### 4.    Retention of Jurisdiction

The Court will retain jurisdiction to the extent provided by law.

### 5.    Termination of Obligations in the event of Unprocessed Payments

Any cash, checks or other property which is distributed pursuant to the Plan which is: a) returned as undeliverable without a proper forwarding address; b) which was not mailed or delivered because of the absence of a proper address to which to mail or deliver; or c) any payment which is not negotiated within 60 days requires the Debtor to take the following actions prior to terminating the obligation as provided hereinafter:

1. The Reorganized Debtor shall call any phone number provided by the creditor on its proof of claim and attempt to verify that the mailing address is correct and that that distribution under the plan was received; and

2. The Reorganized Debtor shall email any email address provided by the creditor on its proof of claim and attempt to verify that the mailing address is correct and that that distribution under the plan was received; and

3. The Reorganized Debtor shall send a letter by certified mail (or other means whereby the receipt may be verified) to the creditor at its last known address AND any address on its proof of claim (referred to hereinafter as "the Certified Letter"). The Certified Letter shall notify the creditor that if the payment is not processed within 60 days of the mailing of the Certified Letter, such check shall be paid over to Reorganized Debtor and Reorganized Debtor shall have no further obligations to such creditor. The Certified Letter shall further advise that if the obligation of the creditor is secured against collateral and terminated under this provision, the lien securing the obligation shall also be void and terminated.

Thereafter, provided the Reorganized Debtor has taken the steps above, if the distribution under the plan remains unprocessed 60 days after the mailing of the Certified Letter, such check shall be paid over to Reorganized Debtor and Reorganized Debtor shall have no further obligations to such creditor. Also, if the obligation of the creditor is secured against collateral and terminated under this provision, the lien securing the obligation shall also be void and terminated, subject to approval by the Bankruptcy Court.

## 6.    Settlement or Retention of Claims and Interests

Section 1123(b) of the Bankruptcy Code provides that a Chapter 11 Plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate.

1    Additionally, the Chapter 11 Plan may provide for the retention and enforcement of a claim or

2    interest by the debtor (or a representative of the estate).

3        In accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and

4    may enforce any claims, rights, and causes of action that the Debtor or the bankruptcy estate may

5    hold against any person or entity, including, without limitation, claims and causes of action

6    arising under sections 542, 543, 544, 547, 548, 550 or 553 of the Bankruptcy Code.

7

8        **G.    Tax Consequences of Plan**

       CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN
9
     MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN
10
     ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible
11
     tax consequences is intended solely for the purpose of alerting readers about possible tax issues
12
     this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the
13
     tax consequences contained below are the only tax consequences of the Plan because the Tax
14
     Code embodies many complicated rules which make it difficult to state completely and
15
     accurately all the tax implications of any action.
16
       The following are the tax consequences which the Plan will have on the Debtor's tax
17
     liability:  The Debtor does not anticipate that the confirmation of the Plan will have a significant
18
     or material effect on tax liability.
19
       The Debtor makes no representations regarding the potential tax consequences to
20
     creditors.
21

22    **IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

23        PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

24

SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

which they may wish to consider, as well as certain deadlines for filing claims. The proponent

CANNOT and DOES NOT represent that the discussion contained below is a complete summary

of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the

requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

liquidation, and whether the Plan is feasible. These requirements are not the only requirements

for confirmation.

### A.    Who May Vote or Object

#### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below

not everyone is entitled to vote to accept or reject the Plan.

#### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or

interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)

classified in an impaired class.

##### a)    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest

to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party

1   in interest brings a motion objecting to the claim. When an objection to a claim or interest is

2   filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court,

3   after notice and hearing, either overrules the objection or allows the claim or interest for voting

4   purposes.

5           THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS 5/26/2020.

6   A creditor or interest holder may have an allowed claim or interest even if a proof of claim or

7   interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's

8   schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no

9   party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no

10  party in interest has objected to the interest. Consult the Disclosure Statement and the

11  accompanying Chapter 11 Plan to see how the Proponent has characterized your particular claim

12  or interest.

13

14                      **b)      What is an Impaired Claim/Interest**

15          As noted above, an allowed claim or interest only has the right to vote if it is in a class

16  that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or

17  contractual rights of the members of that class. For example, the class comprised of general

18  unsecured claims (e.g., Class 4) is frequently "impaired" if the Plan provides for payments to

19  members of that class which is less than 100% of what they are owed.

20          In this case, the Proponent believes that classes 1, 3, and 4 are impaired and that holders

21  of allowed claims in each of these classes are therefore entitled to vote to accept or reject the

22  Plan. Class 3 members do not have allowed claims, and therefore are not permitted to vote.

23

24

Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized their claim or class.

### 3.      Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. Claims that are not deemed as allowed claims under Title 11 of the United States Code are not eligible to vote. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.      Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

Note that if there are claimants in a Chapter 11 Plan whose loans have been bifurcated into "secured claims" and "general unsecured claims", they will have two ballots to cast—one vote in their own secured class and one vote for their general unsecured claim.

### 5.    Use of Votes to Confirm the Plan

The Court will confirm the plan if all the requirements of 11 U.S.C. § 1129(a), other than 11 U.S.C. § 1129(a)(15), are met.  Both 11 U.S.C. §§ 1129(a)(8) and 1129(a)(10) ordinarily require the acceptance of the plan by at least one impaired class, subject to the exception provided in 11 U.S.C. § 1191(b).  Acceptance of a class under the plan is determined by the voting of the members within that class as set forth more fully hereinafter.

The exception for the requirement of acceptance of the plan by an impaired class in order to confirm a plan under Subchapter V of Title 11 is contained within 11 U.S.C. § 1191(b).  The exception states that even in the event an impaired class under the plan does not accept the plan, the Court will still confirm the plan notwithstanding the requirements of 11 U.S.C. §§ 1129(a)(8), 1129(a)(10), and 1129(a)(15) if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Non-Accepting Classes

The Bankruptcy Code provides that the court shall confirm a plan under Subchapter V of Chapter 11 only if all the requirements of section 1129(a), other than paragraph (15) of that section, of Title 11 are met.  This is commonly referred to as a "consent plan".

If it is a not a consent plan, the Court may still confirm the Plan if the non-accepting classes are treated in the manner required by the Code.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cram down."

The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of § 1129(a)(8), § 1129(a)(10),  and § 1129(a)(15),  and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as defined in 11 U.S.C. § 1191(c).

### 8.    Request for Confirmation Despite Non-acceptance by Impaired Class(es)

The Debtor will ask the Court to confirm this Plan by cram down on the impaired classes if any of these classes vote "no" to the Plan or if the exception for confirmation under 11 U.S.C. §1191(b) is utilized by the plan proponent.

### B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the

1    Bankruptcy Code.

2         In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee. Secured

3    creditors are paid first from the sales proceeds of properties on which the secured creditor has a

4    lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining

5    sales proceeds, according to their rights to priority. Unsecured creditors with the same priority

6    share in proportion to the amount of their allowed claim in relationship to the amount of total

7    allowed unsecured claims. Finally, interest holders receive the balance that remains after all

8    creditors are paid, if any.

9         For the Court to be able to confirm this Plan, the Court must find that all creditors and

10   interest holders who do not accept the Plan will receive at least as much under the Plan as such

11   holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this

12   requirement is met here based upon the information provided in the liquidation analysis attached

13   as part of Exhibit B. This liquidation analysis reveals that all creditors collectively would be paid

14   $0.00 as payment of their claims if there was a Chapter 7 liquidation, and this Chapter 11 Plan

15   provides for at least a 2.9% payment of all claims in the case.  Accordingly, the creditors will not

16   receive less in the Chapter 11 plan than they would in a Chapter 7 liquidation.

17

18   **C.    Feasibility**

19        Another requirement for confirmation involves the feasibility of the Plan, which means

20   that confirmation of the Plan is not likely to be followed by the liquidation, or the need for

21   further financial reorganization, of the Debtor or any successor to the Debtor under the Plan,

22   unless such liquidation or reorganization is proposed in the Plan.

23        There are at least two important aspects of a feasibility analysis. The first aspect

24   considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to

1   pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent

2   maintains that this aspect of feasibility is satisfied as illustrated hereafter.

3

4   The sources of the cash Debtor will have by the Effective Date, as shown above are:

| | |
|---|---|
| $22,400.00 | Cash in DIP Accounts Currently |
| + $15,000.00 | Additional cash DIP will accumulate from net earnings between now and estimated Effective Date (3 months of surplus) |
| - (paid in installments) | Attorney Fees (Projected, estimated, and agreed to be paid with cash on hand at the Effective Date) |
| - $30,000.00 | Other Administrative Claims (Ch 11 Trustee Fees) |
| = $7,400.00 | TOTAL |

The second aspect of feasibility considers whether the Proponent will have enough cash

over the life of the Plan to make the required Plan payments. The only consideration of available

cash flow is whether there will be sufficient funds to service the monthly debt obligations of the

unimpaired creditors in the case.

Exhibit D to this Plan contains both historical and projected financial information of the

Debtor, and the details for the funding of the plan are provided *supra*.  The expenses for the

Debtor while operating under the plan generally increase at a rate of 2.5% per year to

accommodate inflation over the term of the plan.

If the Debtor finds itself in a position where it needs to reduce its expenses in order to pay

the increasing obligations under the plan, it can do so.  Lonnie Tee's wife can assume the

position that is currently occupied by an employee of the Debtor, thereby dramatically reducing

1    the expenses of the Debtor.  If Lonnie Tee's wife was to assume this position, it would reduce

2    the expenses of the Debtor by approximately $60,000 per year.  This *could* be done, but it is not

3    the best course of action as it would result in the loss of talent for the Debtor.  However, it is

4    possible in the event of a dire need to reduce expenses in order to perform under the plan.

5         Projections for the next five years are provided below, in rounded numbers:

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

*(This portion of the page is intentionally blank)*

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24

## Five Year Forward Looking Projection While Performing Under Proposed Plan

**(ANNUAL Amounts in Each Year of the Plan; Assumes Consent Plan)**

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Business Income | $ 660,000 | $ 720,000 | $ 780,000 | $ 840,000 | $ 850,000 |
| **TOTAL INCOME** | $ 660,000 | $ 720,000 | $ 780,000 | $ 840,000 | $ 850,000 |
| **Prior Year Surplus** | | $ 1,100 | $ 3,661 | $ 2,255 | $ 1,121 |
| **Total Usable Funds** | $ 660,000 | $ 721,100 | $ 783,661 | $ 842,255 | $ 851,121 |
| **Expenses:** | | | | | |
| Payroll - Insiders | $ 156,000 | $ 160,000 | $ 165,000 | $ 169,125 | $ 184,000 |
| Payroll - Other Employees | $ 288,000 | $ 295,200 | $ 302,580 | $ 310,145 | $ 317,898 |
| Employee Taxes not included in payroll | $ 43,200 | $ 45,520 | $ 46,758 | $ 47,927 | $ 50,190 |
| Other Tax Liabilities | $ 26,400 | $ 36,000 | $ 39,000 | $ 42,000 | $ 42,500 |
| Health Insurance not otherwise in payroll | $ 9,000 | $ 9,225 | $ 9,456 | $ 9,692 | $ 9,934 |
| Business Liability Insurance | $ 1,800 | $ 1,845 | $ 1,891 | $ 1,938 | $ 1,987 |
| Software Leases | $ 3,000 | $ 3,075 | $ 3,152 | $ 3,231 | $ 3,311 |
| Utilities (e.g., Phone, internet, etc) | $ 8,400 | $ 8,610 | $ 8,825 | $ 9,046 | $ 9,272 |
| Office Expense (inc. equipment & supplies) | $ 3,000 | $ 3,075 | $ 3,152 | $ 3,231 | $ 3,311 |
| Repairs and Maintenance | $ 3,000 | $ 3,075 | $ 3,152 | $ 3,231 | $ 3,311 |
| Miscellaneous Operating Expenses | $ 2,400 | $ 2,460 | $ 2,522 | $ 2,585 | $ 2,649 |
| Professional Expenses | $ 2,500 | $ 2,563 | $ 2,627 | $ 2,692 | $ 2,760 |
| Reserve to ensure cont'd bus. operations | $ 408 | $ 12,000 | $ 20,000 | $ 20,000 | $ 44,747 |
| *SUBTOTAL for Operation Expense* | $ 547,108 | $ 582,648 | $ 608,114 | $ 624,842 | $ 675,871 |
| **Other Ch 11 Plan Payments** | | | | | |
| Class 2 - Secured IRS Claim | $ 24,108 | $ 24,108 | $ 24,108 | $ 24,108 | $ 24,108 |
| Ch 11 Trustee Fees | $ 6,000 | $ 12,000 | $ 12,000 | | |
| Payments to Other Administrative Expense | $ 6,000 | $ 6,000 | $ 6,000 | $ 15,000 | $ 17,000 |
| Class 4 Payments | $ 3,000 | $ 4,500 | $ 5,500 | $ 6,500 | $ 32,500 |
| FTB 507(a)(8) Claim | $ 684 | $ 684 | $ 684 | $ 684 | $ 342 |
| IRS 507 507(a)(8) Claim | $ 72,000 | $ 87,500 | $ 125,000 | $ 170,000 | $ 101,300 |
| *SUBTOTAL for Ch 11 Plan Expense* | $ 111,792 | $ 134,792 | $ 173,292 | $ 216,292 | $ 175,250 |
| **TOTAL FOR ALL EXPENSES:** | $ 658,900 | $ 717,440 | $ 781,406 | $ 841,134 | $ 851,121 |
| **Running Surplus** | $ 1,100 | $ 3,661 | $ 2,255 | $ 1,121 | $ 0 |

# Five Year Forward Looking Projection While Performing Under Proposed Plan

**(MONTHLY Amounts in Each Year of the Plan; Assumes Consent)**

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Business Income | $ 55,000 | $ 60,000 | $ 65,000 | $ 70,000 | $ 70,833 |
| **TOTAL INCOME** | $ 55,000 | $ 60,000 | $ 65,000 | $ 70,000 | $ 70,833 |
| Prior Year Surplus | $ - | $ 92 | $ 305 | $ 188 | $ 93 |
| **Total Usable Funds** | $ 55,000 | $ 60,092 | $ 65,305 | $ 70,188 | $ 70,927 |
| **Expenses:** | | | | | |
| Payroll - Insiders | $ 13,000 | $ 13,333 | $ 13,750 | $ 14,094 | $ 15,333 |
| Payroll - Other Employees | $ 24,000 | $ 24,600 | $ 25,215 | $ 25,845 | $ 26,492 |
| Employee Taxes not included in payroll | $ 3,600 | $ 3,793 | $ 3,897 | $ 3,994 | $ 4,182 |
| Other Tax Liabilities | $ 2,200 | $ 3,000 | $ 3,250 | $ 3,500 | $ 3,542 |
| Health Insurance not otherwise in payroll | $ 750 | $ 769 | $ 788 | $ 808 | $ 828 |
| Business Liability Insurance | $ 150 | $ 154 | $ 158 | $ 162 | $ 166 |
| Software Leases | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Utilities (e.g., Phone, internet, etc) | $ 700 | $ 718 | $ 735 | $ 754 | $ 773 |
| Office Expense (inc. equipment & supplies) | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Repairs and Maintenance | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Miscellaneous Operating Expenses | $ 200 | $ 205 | $ 210 | $ 215 | $ 221 |
| Professional Expenses | $ 208 | $ 214 | $ 219 | $ 224 | $ 230 |
| Reserve to ensure cont'd bus. operations | $ 34 | $ 1,000 | $ 1,667 | $ 1,667 | $ 3,729 |
| ***SUBTOTAL for Operation Expense*** | $ 45,592 | $ 48,554 | $ 50,676 | $ 52,070 | $ 56,323 |
| **Other Ch 11 Plan Payments** | | | | | |
| Class 2 - Secured IRS Claim | $ 2,009 | $ 2,009 | $ 2,009 | $ 2,009 | $ 2,009 |
| Ch 11 Trustee Fees | $ 500 | $ 1,000 | $ 1,000 | $ - | $ - |
| Payments to Other Administrative Expense | $ 500 | $ 500 | $ 500 | $ 1,250 | $ 1,417 |
| Class 4 Payments | $ 250 | $ 375 | $ 458 | $ 542 | $ 2,708 |
| FTB 507(a)(8) Claim | $ 57 | $ 57 | $ 57 | $ 57 | $ 29 |
| IRS 507 507(a)(8) Claim | $ 6,000 | $ 7,292 | $ 10,417 | $ 14,167 | $ 8,442 |
| ***SUBTOTAL for Ch 11 Plan Expense*** | $ 9,316 | $ 11,233 | $ 14,441 | $ 18,024 | $ 14,604 |
| **TOTAL FOR ALL EXPENSES:** | $ 54,908 | $ 59,787 | $ 65,117 | $ 70,094 | $ 70,927 |
| **Running Surplus** | $ 92 | $ 305 | $ 188 | $ 93 | $ 0 |

Based upon all of the aforementioned factors, this Plan is clearly feasible and ready for Chapter 11 confirmation.

## V.    EFFECTS OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that if the Plan is confirmed as a consensual plan under the provisions of 11 U.S.C. §1191(a), the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. § 1141, as soon as a discharge is allowed under Title 11 of the United States Code. However, the discharge will not discharge any further liability imposed by the Plan.

If the Plan is confirmed pursuant to the provisions of 11 U.S.C. §1191(b) (commonly known as "cramdown"), then the discharge will not be granted until the completion of all plan payments by the Debtor as required by 11 U.S.C. §1192.

### B.    Revesting of Property in the Debtor

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.  This Plan does limit the vesting of the property of the estate in the Debtor as a means of protecting the unsecured creditors' payment under the plan, as detailed more fully in the Plan above in Section III.F.2. Protection of Creditors and Remedies in the Event Payments are Not Made.

### C.    Modification of Plan

The proponent and parties in interest may seek to modify the Plan pursuant to the provisions of 11 U.S.C. § 1193.

1

### D.    Post-Confirmation Status Report

2

Unless otherwise ordered within the confirmation order, within 120 days of the entry of

3

the order confirming the Plan, Debtor shall file a status report with the Court explaining what

4

progress has been made toward consummation of the confirmed Plan. The status report shall be

5

served on the United States Trustee, the twenty largest unsecured creditors, and those parties

6

who have requested special notice. Further status reports shall be filed every 120 days and served

7

on the same entities.

8

### E.    Post-Confirmation Conversion/Dismissal

9

A creditor or party in interest may bring a motion to convert or dismiss the case under

10

§ 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court

11

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property of the

12

Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter

13

7 estate, including the post-petition assets and income of the Debtor is the plan is not consensual

14

pursuant to 11 U.S.C. §1186. The automatic stay will be reimposed upon the revested property,

15

but only to the extent that relief from stay was not previously authorized by the Court during this

16

case.

17

The order confirming the Plan may also be revoked under very limited circumstances.

18

The Court may revoke the order if the order of confirmation was procured by fraud and if the

19

party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

20

entry of the order of confirmation.

21

//

22

//

23

//

24

## F.    Final Decree

The Chapter 11 Plan provides that a discharge will be entered by the Court as soon as the Debtor is eligible for a discharge.  Further, the Debtor may seek an order from the Court to administratively close the case while the Debtor continues to perform under the terms of the Chapter 11 Plan, and to reopen the case at a later time to seek additional orders from the Court that may be appropriate at a later time (including, but not limited to, an order discharging the obligations of the Debtor that are eligible for a discharge).

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Dated this 16 March 2021.

**Name and Identity of Plan Proponent**

Vantage Point Apparel Software, Inc.

Lonnie Tee

**Identity of Plan Proponent's Counsel:**

**M Jones & Associates, PC**

By: Michael Jones
*Debtor's Counsel*

SUPPORTING EXHIBITS

EXHIBIT A: Information concerning Current/Post Petition Income and Expenses

EXHIBIT B: Liquidation Analysis--Bankruptcy Petition Schedules A and B

EXHIBIT C: Five Year Projection while operating under the Ch 11 Plan

EXHIBIT D: Debtor's Financial History

EXHIBIT E: Details on each Class with Class Members and Claim Amount

EXHIBIT F: Amortization Schedules for IRS 507(a)(8) claim and Class 1 claim

EXHIBIT G: Sample Chapter 11 Ballot

EXHIBIT H: Lonnie Tee's confirmed Chapter 13 Plan and Confirmation Order

1

2

3

4

5

6    EXHIBIT A:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Future Disposable Income/Plan Payments**

**I.    Calculation of Disposable Income for the Plan**

Debtor's source of income consists of income generated wages and business activities in the projected amounts of:

| | Business Income | Additional Funds | Total Avail. Funds |
|---|---|---|---|
| **Year 1** | $660,000 | | $660,000 |
| **Year 2** | $720,000 | $1,100 | $721,100 |
| **Year 3** | $780,000 | $3,661 | $783,661 |
| **Year 4** | $840,000 | $2,255 | $842,255 |
| **Year 5** | $850,000 | $1,121 | $851,121 |

**II.    Expenses and Proposed Plan Payments**

Below are the following monthly expenses as set described within this Chapter 11 Plan:

| | Usable Gross Funds | Plan Payments & Expenses | Annual Surplus |
|---|---|---|---|
| **Year 1** | $660,000 | $658,900 | $1,100 |
| **Year 2** | $720,100 | $717,440 | $3,661 |
| **Year 3** | $783,661 | $781,406 | $2,255 |
| **Year 4** | $842,255 | $841,134 | $1,121 |
| **Year 5** | $851,121 | $851,121 | $0 |

1

2

3

4      EXHIBIT B:

5      Liquidation Analysis--Bankruptcy Petition Schedules A, B, and C

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|

## Real Property (Schedule A)

*(There is no real property in this proceeding)*

## Personal Property (Schedule B)

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| Personal Property Valuation | $ 106,415.00 | $ 106,415.00 |
| Less: Exemptions | $ - | $ - |
| Less: Secured Claims | $ - | $ - |
| Net Liquidation Value: | $ 106,415.00 | $ 106,415.00 |

## Calculation of Payout to General Unsecured Creditors

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| TOTAL NET REAL & PERSONAL PROPERTY | $ 106,415.00 | $ 106,415.00 |
| Less: Chapter 11 Admin. Fees and Priority Tax Claims | $ 468,781.87 | $ 488,781.87 |
| Less: Other Priority Claims | $ - | $ - |
| **Funds Available to General Unsecured Claims** | $ - | $ - |

## Comparision of Chapter 7 and  Proposed Chapter 11 Treatment

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| Estimated Amount of Allowed General Unsecured Claims | $ 938,556.56 | $ 938,556.56 |
| Amount to General Unsecured Claims in Ch 7 Liquidation | $ - |  |
| Amount to General Unsecured Claims in Ch 11 Plan |  | $ 27,000.00 |
| **Estimated Percentage of allowed claims to General Unsecured Claims in Liquidation of Debtor** | **0%** | **2.9%** |

**Fill in this information to identify the case:**

Debtor name _____Vantage Point Apparel Software, Inc._____

United States Bankruptcy Court for the: __Central District of California__

Case number (If known): _____

☐ Check if this is an
amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property
**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:  Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** $ 200.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. Union Bank | Checking | 2  1  1  9 | $ 8.00 |
| 3.2. Union Bank | Checking | 5  6  2  0 | $ 1,707.00 |

4. **Other cash equivalents** *(Identify all)*

4.1. _____  $_____
4.2. _____  $_____

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.   $ 1,915.00

## Part 2:  Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

7.1. _____  $_____
7.2. _____  $_____

Debtor    Vantage Point Apparel Software, Inc.    Case number (if known)_____
        Name

---

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1._____    $_____

8.2._____    $_____

**9. Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.    $_____

## Part 3: Accounts receivable

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

| | | | **Current value of debtor's interest** |

**11. Accounts receivable**

| | face amount | – doubtful or uncollectible accounts | | Current value of debtor's interest |
|---|---|---|---|---|
| 11a. 90 days old or less: | 90,000.00 | – 0.00 | = ........→ | $ 90,000.00 |
| 11b. Over 90 days old: | 10,000.00 | – 1,000.00 | = ........→ | $ 9,000.00 |

**12. Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.    $ 99,000.00

## Part 4: Investments

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

| | **Valuation method used for current value** | **Current value of debtor's interest** |

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

| | Valuation method | Current value |
|---|---|---|
| 14.1. _____ | _____ | $_____ |
| 14.2. _____ | _____ | $_____ |

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:    % of ownership:

| | | Valuation method | Current value |
|---|---|---|---|
| 15.1._____ | _____% | _____ | $_____ |
| 15.2._____ | _____% | _____ | $_____ |

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

| | Valuation method | Current value |
|---|---|---|
| 16.1._____ | _____ | $_____ |
| 16.2._____ | _____ | $_____ |

**17. Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.    $_____

---

Debtor  Vantage Point Apparel Software, Inc.  Case number *(if known)*_____
          Name

## Part 5:  Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**
☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| _____ | ___/___/___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | | | | |
| _____ | ___/___/___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | | | | |
| _____ | ___/___/___ MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** | | | | |
| _____ | ___/___/___ MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**
Add lines 19 through 22. Copy the total to line 84.

$_____

24. **Is any of the property listed in Part 5 perishable?**
☐ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☐ Yes. Book value _____ Valuation method_____ Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☐ No
☐ Yes

## Part 6:  Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**
☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| **29. Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $_____ | | $_____ |

Debtor    Vantage Point Apparel Software, Inc.    Case number *(if known)*_____
         Name

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.    $_____

**34. Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

    ☐ No

    ☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____  Valuation method _____  Current value $_____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture**<br>Regular and ordinary office furniture | $ 1,500.00 | comparable used valu | $ 1,500.00 |
| **40. Office fixtures**<br>Regular and ordinary office fixtures | $ 100.00 | comparable used valu | $ 100.00 |
| **41. Office equipment, including all computer equipment and communication systems equipment and software**<br>Regular and ordinary office equipment, including computers | $ 3,500.00 | comparable used valu | $ 3,500.00 |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 _____ | $_____ | _____ | $_____ |
| 42.2 _____ | $_____ | _____ | $_____ |
| 42.3 _____ | $_____ | _____ · | $_____ |

**43. Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.    $ 5,100.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes



Debtor    Vantage Point Apparel Software, Inc.    Case number (if known)_____
_____
Name

## Part 8: Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | | | |
|---|---|---|---|
| 47.1_____ | $_____ | _____ | $_____ |
| 47.2_____ | $_____ | _____ | $_____ |
| 47.3_____ | $_____ | _____ | $_____ |
| 47.4_____ | $_____ | _____ | $_____ |

**48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

| | | | |
|---|---|---|---|
| 48.1_____ | $_____ | _____ | $_____ |
| 48.2_____ | $_____ | _____ | $_____ |

**49. Aircraft and accessories**

| | | | |
|---|---|---|---|
| 49.1_____ | $_____ | _____ | $_____ |
| 49.2_____ | $_____ | _____ | $_____ |

**50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | | | |
|---|---|---|---|
| | $_____ | _____ | $_____ |

**51. Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.    $_____

**52. Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

**53. Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes



Debtor  Vantage Point Apparel Software, Inc.                                 Case number (if known)_____
        Name

## Part 9: Real property

**54. Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 | | $_____ | _____ | $_____ |
| 55.2 | | $_____ | _____ | $_____ |
| 55.3 | | $_____ | _____ | $_____ |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$_____

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☐ Yes

## Part 10: Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets**<br>Software developed by debtor and copyrighted | $ 100.00 | Software has no realistic valu | 100.00 |
| **61. Internet domain names and websites**<br>corporate webpage at www. vantsoft.com | $ 300.00 | Value stated is annual cost of | 300.00 |
| **62. Licenses, franchises, and royalties** | $_____ | _____ | $_____ |
| **63. Customer lists, mailing lists, or other compilations** | $_____ | _____ | $_____ |
| **64. Other intangibles, or intellectual property** | $_____ | _____ | $_____ |
| **65. Goodwill** | $_____ | _____ | $_____ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$ 400.00

Debtor    Vantage Point Apparel Software, Inc.    Case number (*if known*)_____
_____
Name

67. **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**
- ☑ No
- ☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☑ No
- ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

---
**Part 11:    All other assets**
---

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.
- ☑ No. Go to Part 12.
- ☐ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**
Description (include name of obligor)

_____    _____ – _____ = → $_____
    Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____    Tax year _____    $_____
_____    Tax year _____    $_____
_____    Tax year _____    $_____

73. **Interests in insurance policies or annuities**
$_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
$_____
Nature of claim    _____
Amount requested    $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**
$_____
Nature of claim    _____
Amount requested    $_____

76. **Trusts, equitable or future interests in property**
$_____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
$_____
$_____

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.
$_____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

| Debtor | Vantage Point Apparel Software, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

## Part 12:    Summary

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. *Copy line 5, Part 1.* | $ 1,915.00 | |
| 81. Deposits and prepayments. *Copy line 9, Part 2.* | $ 0.00 | |
| 82. Accounts receivable. *Copy line 12, Part 3.* | $ 99,000.00 | |
| 83. Investments. *Copy line 17, Part 4.* | $ 0.00 | |
| 84. Inventory. *Copy line 23, Part 5.* | $ 0.00 | |
| 85. Farming and fishing-related assets. *Copy line 33, Part 6.* | $ 0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. *Copy line 43, Part 7.* | $ 5,100.00 | |
| 87. Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $ 0.00 | |
| 88. Real property. *Copy line 56, Part 9.* ..............................➔ | | $ 0.00 |
| 89. Intangibles and intellectual property. *Copy line 66, Part 10.* | $ 400.00 | |
| 90. All other assets. *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........................91a. | $ 106,415.00 | + 91b. $ 0.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. .................................................    106,415.00    $ 106,415.00

1

2

3

# EXHIBIT C:

4

Five Year Projection while operating under the Ch 11 Plan

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## Five Year Forward Looking Projection While Performing Under Proposed Plan

**(ANNUAL Amounts in Each Year of the Plan; Assumes Consent Plan)**

| | | Year 1 | | Year 2 | | Year 3 | | Year 4 | | Year 5 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | |
| Business Income | $ | 660,000 | $ | 720,000 | $ | 780,000 | $ | 840,000 | $ | 850,000 |
| **TOTAL INCOME** | $ | **660,000** | $ | **720,000** | $ | **780,000** | $ | **840,000** | $ | **850,000** |
| **Prior Year Surplus** | | | $ | 1,100 | $ | 3,661 | $ | 2,255 | $ | 1,121 |
| **Total Usable Funds** | $ | **660,000** | $ | **721,100** | $ | **783,661** | $ | **842,255** | $ | **851,121** |
| **Expenses:** | | | | | | | | | | |
| Payroll - Insiders | $ | 156,000 | $ | 160,000 | $ | 165,000 | $ | 169,125 | $ | 184,000 |
| Payroll - Other Employees | $ | 288,000 | $ | 295,200 | $ | 302,580 | $ | 310,145 | $ | 317,898 |
| Employee Taxes not included in payroll | $ | 43,200 | $ | 45,520 | $ | 46,758 | $ | 47,927 | $ | 50,190 |
| Other Tax Liabilities | $ | 26,400 | $ | 36,000 | $ | 39,000 | $ | 42,000 | $ | 42,500 |
| Health Insurance not otherwise in payroll | $ | 9,000 | $ | 9,225 | $ | 9,456 | $ | 9,692 | $ | 9,934 |
| Business Liability Insurance | $ | 1,800 | $ | 1,845 | $ | 1,891 | $ | 1,938 | $ | 1,987 |
| Software Leases | $ | 3,000 | $ | 3,075 | $ | 3,152 | $ | 3,231 | $ | 3,311 |
| Utilities (e.g., Phone, internet, etc) | $ | 8,400 | $ | 8,610 | $ | 8,825 | $ | 9,046 | $ | 9,272 |
| Office Expense (inc. equipment & supplies) | $ | 3,000 | $ | 3,075 | $ | 3,152 | $ | 3,231 | $ | 3,311 |
| Repairs and Maintenance | $ | 3,000 | $ | 3,075 | $ | 3,152 | $ | 3,231 | $ | 3,311 |
| Miscellaneous Operating Expenses | $ | 2,400 | $ | 2,460 | $ | 2,522 | $ | 2,585 | $ | 2,649 |
| Professional Expenses | $ | 2,500 | $ | 2,563 | $ | 2,627 | $ | 2,692 | $ | 2,760 |
| Reserve to ensure cont'd bus. operations | $ | 408 | $ | 12,000 | $ | 20,000 | $ | 20,000 | $ | 44,747 |
| *SUBTOTAL for Operation Expense* | $ | **547,108** | $ | **582,648** | $ | **608,114** | $ | **624,842** | $ | **675,871** |
| **Other Ch 11 Plan Payments** | | | | | | | | | | |
| Class 2 - Secured IRS Claim | $ | 24,108 | $ | 24,108 | $ | 24,108 | $ | 24,108 | $ | 24,108 |
| Ch 11 Trustee Fees | $ | 6,000 | $ | 12,000 | $ | 12,000 | | | | |
| Payments to Other Administrative Expense | $ | 6,000 | $ | 6,000 | $ | 6,000 | $ | 15,000 | $ | 17,000 |
| Class 4 Payments | $ | 3,000 | $ | 4,500 | $ | 5,500 | $ | 6,500 | $ | 32,500 |
| FTB 507(a)(8) Claim | $ | 684 | $ | 684 | $ | 684 | $ | 684 | $ | 342 |
| IRS 507 507(a)(8) Claim | $ | 72,000 | $ | 87,500 | $ | 125,000 | $ | 170,000 | $ | 101,300 |
| *SUBTOTAL for Ch 11 Plan Expense* | $ | **111,792** | $ | **134,792** | $ | **173,292** | $ | **216,292** | $ | **175,250** |
| **TOTAL FOR ALL EXPENSES:** | $ | **658,900** | $ | **717,440** | $ | **781,406** | $ | **841,134** | $ | **851,121** |
| **Running Surplus** | $ | **1,100** | $ | **3,661** | $ | **2,255** | $ | **1,121** | $ | **0** |

# Five Year Forward Looking Projection While Performing Under Proposed Plan

**(MONTHLY Amounts in Each Year of the Plan; Assumes Consent)**

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| **Income** |  |  |  |  |  |
| Business Income | $ 55,000 | $ 60,000 | $ 65,000 | $ 70,000 | $ 70,833 |
| **TOTAL INCOME** | $ 55,000 | $ 60,000 | $ 65,000 | $ 70,000 | $ 70,833 |
| Prior Year Surplus | $ - | $ 92 | $ 305 | $ 188 | $ 93 |
| **Total Usable Funds** | $ 55,000 | $ 60,092 | $ 65,305 | $ 70,188 | $ 70,927 |
| **Expenses:** |  |  |  |  |  |
| Payroll - Insiders | $ 13,000 | $ 13,333 | $ 13,750 | $ 14,094 | $ 15,333 |
| Payroll - Other Employees | $ 24,000 | $ 24,600 | $ 25,215 | $ 25,845 | $ 26,492 |
| Employee Taxes not included in payroll | $ 3,600 | $ 3,793 | $ 3,897 | $ 3,994 | $ 4,182 |
| Other Tax Liabilities | $ 2,200 | $ 3,000 | $ 3,250 | $ 3,500 | $ 3,542 |
| Health Insurance not otherwise in payroll | $ 750 | $ 769 | $ 788 | $ 808 | $ 828 |
| Business Liability Insurance | $ 150 | $ 154 | $ 158 | $ 162 | $ 166 |
| Software Leases | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Utilities (e.g., Phone, internet, etc) | $ 700 | $ 718 | $ 735 | $ 754 | $ 773 |
| Office Expense (inc. equipment & supplies) | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Repairs and Maintenance | $ 250 | $ 256 | $ 263 | $ 269 | $ 276 |
| Miscellaneous Operating Expenses | $ 200 | $ 205 | $ 210 | $ 215 | $ 221 |
| Professional Expenses | $ 208 | $ 214 | $ 219 | $ 224 | $ 230 |
| Reserve to ensure cont'd bus. operations | $ 34 | $ 1,000 | $ 1,667 | $ 1,667 | $ 3,729 |
| ***SUBTOTAL for Operation Expense*** | $ 45,592 | $ 48,554 | $ 50,676 | $ 52,070 | $ 56,323 |
| **Other Ch 11 Plan Payments** |  |  |  |  |  |
| Class 2 - Secured IRS Claim | $ 2,009 | $ 2,009 | $ 2,009 | $ 2,009 | $ 2,009 |
| Ch 11 Trustee Fees | $ 500 | $ 1,000 | $ 1,000 | $ - | $ - |
| Payments to Other Administrative Expense | $ 500 | $ 500 | $ 500 | $ 1,250 | $ 1,417 |
| Class 4 Payments | $ 250 | $ 375 | $ 458 | $ 542 | $ 2,708 |
| FTB 507(a)(8) Claim | $ 57 | $ 57 | $ 57 | $ 57 | $ 29 |
| IRS 507 507(a)(8) Claim | $ 6,000 | $ 7,292 | $ 10,417 | $ 14,167 | $ 8,442 |
| ***SUBTOTAL for Ch 11 Plan Expense*** | $ 9,316 | $ 11,233 | $ 14,441 | $ 18,024 | $ 14,604 |
| **TOTAL FOR ALL EXPENSES:** | $ 54,908 | $ 59,787 | $ 65,117 | $ 70,094 | $ 70,927 |
| **Running Surplus** | $ 92 | $ 305 | $ 188 | $ 93 | $ 0 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT D:

Debtor's Financial History

Form **1120**

Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 2018 or tax year beginning _____, 2018, ending _____, 20 _____

▶ Go to *www.irs.gov/Form1120* for instructions and the latest information.

OMB No. 1545-0123

**2018**

**A  Check if:**

1a Consolidated return (attach Form 851) ☐
 b Life/nonlife consolidated return ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (see instructions) ☐
4 Schedule M-3 attached ☐

**TYPE OR PRINT**

**Name**  VANTAGE POINT APPAREL SOFTWARE, INC.

**Number, street, and room or suite no. If a P.O. box, see instructions.**  26632 TOWNE CENTRE DRIVE, SUITE #300

**City or town, state or province, country, and ZIP or foreign postal code**  FOOTHILL RANCH, CA 92610

**B  Employer identification number**  ████8180

**C  Date incorporated**  7/1/2003

**D  Total assets (see instructions)**  $  264,897

**E  Check if:** (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☑ Address change

### Income

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales . . . . . . . . . . . | 1a | 829,548 |
| b | Returns and allowances . . . . . . . . . . . | 1b | |
| c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . | 1c | 829,548 |
| 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . | 3 | 829,548 |
| 4 | Dividends and inclusions (Schedule C, line 23, column (a)) . . . . . . . . | 4 | |
| 5 | Interest . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |
| 6 | Gross rents . . . . . . . . . . . . . . . . . . . . . . | 6 | |
| 7 | Gross royalties . . . . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Capital gain net income (attach Schedule D (Form 1120)) . . . . . . . . | 8 | |
| 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . | 9 | |
| 10 | Other income (see instructions—attach statement) . . . . . . . . . . | 10 | |
| 11 | **Total income. Add lines 3 through 10** . . . . . . . . . . . ▶ | 11 | 829,548 |

### Deductions (See instructions for limitations on deductions.)

| | | | |
|---|---|---|---|
| 12 | Compensation of officers (see instructions—attach Form 1125-E) . . . . . ▶ | 12 | 126,600 |
| 13 | Salaries and wages (less employment credits) . . . . . . . . . . . | 13 | 431,944 |
| 14 | Repairs and maintenance . . . . . . . . . . . . . . . . . | 14 | 670 |
| 15 | Bad debts . . . . . . . . . . . . . . . . . . . . . . | 15 | |
| 16 | Rents . . . . . . . . . . . . . . . . . . . . . . . . | 16 | 42,005 |
| 17 | Taxes and licenses . . . . . . . . . . . . . . . . . . . | 17 | 91,610 |
| 18 | Interest (see instructions) . . . . . . . . . . . . . . . . . | 18 | |
| 19 | Charitable contributions . . . . . . . . . . . . . . . . . . | 19 | |
| 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . | 20 | |
| 21 | Depletion . . . . . . . . . . . . . . . . . . . . . . | 21 | |
| 22 | Advertising . . . . . . . . . . . . . . . . . . . . . . | 22 | |
| 23 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . | 23 | |
| 24 | Employee benefit programs . . . . . . . . . . . . . . . . . | 24 | 14,439 |
| 25 | Reserved for future use . . . . . . . . . . . . . . . . . . | 25 | |
| 26 | Other deductions (attach statement) . . . . . . . . . . . . . . | 26 | 74,602 |
| 27 | **Total deductions. Add lines 12 through 26** . . . . . . . . . . . ▶ | 27 | 781,870 |
| 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 . | 28 | 47,678 |
| 29a | Net operating loss deduction (see instructions) . . . . . | 29a | |
| b | Special deductions (Schedule C, line 24, column (c)) . . . | 29b | |
| c | Add lines 29a and 29b . . . . . . . . . . . . . . . . . . | 29c | |

### Tax, Refundable Credits, and Payments

| | | | |
|---|---|---|---|
| 30 | Taxable income. Subtract line 29c from line 28. See instructions . . . . . . | 30 | 47,678 |
| 31 | Total tax (Schedule J, Part I, line 11) . . . . . . . . . . . . . | 31 | 10,012 |
| 32 | 2018 net 965 tax liability paid (Schedule J, Part II, line 12) . . . . . . . | 32 | |
| 33 | Total payments, credits, and section 965 net tax liability (Schedule J, Part III, line 23) . ▶ | 33 | |
| 34 | Estimated tax penalty. See instructions. Check if Form 2220 is attached . . . . ▶ ☐ | 34 | |
| 35 | Amount owed. If line 33 is smaller than the total of lines 31, 32, and 34, enter amount owed | 35 | 10,012 |
| 36 | Overpayment. If line 33 is larger than the total of lines 31, 32, and 34, enter amount overpaid | 36 | |
| 37 | Enter amount from line 36 you want: Credited to 2019 estimated tax ▶        Refunded ▶ | 37 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _[signature]_    Date 11/20/2019    Title president

May the IRS discuss this return with the preparer shown below? See instructions. ☐ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|

Firm's name ▶                Firm's EIN ▶

Firm's address ▶              Phone no.

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 11450Q    Form **1120** (2018)

Form 1120 (2018)

**Schedule C**  Dividends, Inclusions, and Special Deductions (see instructions)

Page **2**

| | | (a) Dividends and inclusions | (b) % | (c) Special deductions (a) × (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . | | 50 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . | | 65 | |
| 3 | Dividends on certain debt-financed stock of domestic and foreign corporations . . | | see instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities . . . | | 23.3 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities . . . | | 26.7 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs . . . | | 50 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs . . . | | 65 | |
| 8 | Dividends from wholly owned foreign subsidiaries . . . . . . . . . | | 100 | |
| 9 | **Subtotal.** Add lines 1 through 8. See instructions for limitations . . . . . | | see instructions | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 . . . . . | | 100 | |
| 11 | Dividends from affiliated group members . . . . . . . . . . . | | 100 | |
| 12 | Dividends from certain FSCs . . . . . . . . . . . . . . | | 100 | |
| 13 | Foreign-source portion of dividends received from a specified 10%-owned foreign corporation (excluding hybrid dividends) (see instructions) . . . . . . . | | 100 | |
| 14 | Dividends from foreign corporations not included on line 3, 6, 7, 8, 11, 12, or 13 (including any hybrid dividends) . . . . . . . . . . . . . | | | |
| 15 | Section 965(a) inclusion . . . . . . . . . . . . . . . | | see instructions | |
| 16a | Subpart F inclusions derived from the sale by a controlled foreign corporation (CFC) of the stock of a lower-tier foreign corporation treated as a dividend (attach Form(s) 5471) (see instructions) . . . . . . . . . . . . . . . . | | 100 | |
| b | Subpart F inclusions derived from hybrid dividends of tiered corporations (attach Form(s) 5471) (see instructions) . . . . . . . . . . . . . . | | | |
| c | Other inclusions from CFCs under subpart F not included on line 15, 16a, 16b, or 17 (attach Form(s) 5471) (see instructions). . . . . . . . . . . . | | | |
| 17 | Global Intangible Low-Taxed Income (GILTI) (attach Form(s) 5471 and Form 8992) . . | | | |
| 18 | Gross-up for foreign taxes deemed paid . . . . . . . . . . . | | | |
| 19 | IC-DISC and former DISC dividends not included on line 1, 2, or 3 . . . . . | | | |
| 20 | Other dividends . . . . . . . . . . . . . . . . . | | | |
| 21 | Deduction for dividends paid on certain preferred stock of public utilities . . . | | | |
| 22 | Section 250 deduction (attach Form 8993) . . . . . . . . . . . | | | |
| 23 | **Total dividends and inclusions.** Add lines 9 through 20. Enter here and on page 1, line 4 . . . . . . . . . . . . . . . . . . . . | | | |
| 24 | **Total special deductions.** Add lines 9 through 22, column (c). Enter here and on page 1, line 29b . . . . . . . . . | | | |

Form **1120** (2018)

Form 1120 (2018)                                                                                                    Page **3**

| **Schedule J** | **Tax Computation and Payment** (see instructions) | | |
|---|---|---|---|

**Part I–Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)). See instructions ▶ ☐ | | |
| 2 | Income tax. See instructions | **2** | 10,012 |
| 3 | Base erosion minimum tax (attach Form 8991) | **3** | |
| 4 | Add lines 2 and 3 | **4** | 10,012 |
| 5a | Foreign tax credit (attach Form 1118) | **5a** | |
| b | Credit from Form 8834 (see instructions) | **5b** | |
| c | General business credit (attach Form 3800) | **5c** | |
| d | Credit for prior year minimum tax (attach Form 8827) | **5d** | |
| e | Bond credits from Form 8912 | **5e** | |
| 6 | **Total credits.** Add lines 5a through 5e | **6** | |
| 7 | Subtract line 6 from line 4 | **7** | 10,012 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) | **8** | |
| 9a | Recapture of investment credit (attach Form 4255) | **9a** | |
| b | Recapture of low-income housing credit (attach Form 8611) | **9b** | |
| c | Interest due under the look-back method—completed long-term contracts (attach Form 8697) | **9c** | |
| d | Interest due under the look-back method—income forecast method (attach Form 8866) | **9d** | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) | **9e** | |
| f | Other (see instructions—attach statement) | **9f** | |
| 10 | **Total.** Add lines 9a through 9f | **10** | |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 | **11** | 10,012 |

**Part II–Section 965 Payments** (see instructions)

| | | | |
|---|---|---|---|
| 12 | 2018 net 965 tax liability paid from Form 965-B, Part II, column (k), line 2. Enter here and on page 1, line 32 | **12** | |

**Part III–Payments, Refundable Credits, and Section 965 Net Tax Liability**

| | | | |
|---|---|---|---|
| 13 | 2017 overpayment credited to 2018 | **13** | |
| 14 | 2018 estimated tax payments | **14** | |
| 15 | 2018 refund applied for on Form 4466 | **15** | ( ) |
| 16 | Combine lines 13, 14, and 15 | **16** | |
| 17 | Tax deposited with Form 7004 | **17** | |
| 18 | Withholding (see instructions) | **18** | |
| 19 | **Total payments.** Add lines 16, 17, and 18 | **19** | |
| 20 | Refundable credits from: | | |
| a | Form 2439 | **20a** | |
| b | Form 4136 | **20b** | |
| c | Form 8827, line 8c | **20c** | |
| d | Other (attach statement—see instructions) | **20d** | |
| 21 | **Total credits.** Add lines 20a through 20d | **21** | |
| 22 | 2018 net 965 tax liability from Form 965-B, Part I, column (d), line 2. See instructions | **22** | |
| 23 | **Total payments, credits, and section 965 net tax liability.** Add lines 19, 21, and 22. Enter here and on page 1, line 33 | **23** | 0 |

Form **1120** (2018)

Form 1120 (2018)

Page **4**

| **Schedule K** | **Other Information** (see instructions) | | Yes | No |
|---|---|---|---|---|
| 1 | Check accounting method: a ☑ Cash    b ☐ Accrual    c ☐ Other (specify) ▶ _____ | | | |
| 2 | See the instructions and enter the: | | | |
| a | Business activity code no. ▶                541511 | | | |
| b | Business activity ▶ COMPUTER SOFTWARE | | | |
| c | Product or service ▶ COMPUTER PROGRAMMING | | | |
| 3 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . . . | | | ✓ |
| | If "Yes," enter name and EIN of the parent corporation ▶ | | | |
| 4 | At the end of the tax year: | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) . . . . . | | | ✓ |
| b | Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part II of Schedule G (Form 1120) (attach Schedule G)   . | | | ✓ |
| 5 | At the end of the tax year, did the corporation: | | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on **Form 851**, Affiliations Schedule? For rules of constructive ownership, see instructions. | | | ✓ |

If "Yes," complete (i) through (iv) below.

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | | Yes | No |
|---|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. | | | ✓ |

If "Yes," complete (i) through (iv) below.

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 6 | During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? See sections 301 and 316 . . . . . . . . | | | ✓ |
| | If "Yes," file **Form 5452**, Corporate Report of Nondividend Distributions. See the instructions for Form 5452. | | | |
| | If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary. | | | |
| 7 | At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of the total voting power of all classes of the corporation's stock entitled to vote or at least 25% of the total value of all classes of the corporation's stock? . | | | ✓ |
| | For rules of attribution, see section 318. If "Yes," enter: | | | |
| | (a) Percentage owned ▶ _____ and (b) Owner's country ▶ _____ | | | |
| | (c) The corporation may have to file **Form 5472**, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached ▶ _____ | | | |
| 8 | Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . . ▶ ☐ | | | |
| | If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments. | | | |
| 9 | Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____ | | | |
| 10 | Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ _____ | | | |
| 11 | If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here (see instructions) ▶ ☐ | | | |
| | If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid. | | | |
| 12 | Enter the available NOL carryover from prior tax years (do not reduce it by any deduction reported on page 1, line 29a.) . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____ | | | |

Form **1120** (2018)

Form 1120 (2018)

Page **5**

| **Schedule K** | **Other Information** *(continued from page 4)* | Yes | No |
|---|---|---|---|
| 13 | Are the corporation's total receipts (page 1, line 1a, plus lines 4 through 10) for the tax year **and** its total assets at the end of the tax year less than $250,000? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| | If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year ▶ $_____ | | |
| 14 | Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement? See instructions . . . . | | ✓ |
| | If "Yes," complete and attach Schedule UTP. | | |
| 15a | Did the corporation make any payments in 2018 that would require it to file Form(s) 1099? . . . . . . . . . . . | | ✓ |
| b | If "Yes," did or will the corporation file required Forms 1099? . . . . . . . . . . . . . . . . . . . | | |
| 16 | During this tax year, did the corporation have an 80% or more change in ownership, including a change due to redemption of its own stock? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| 17 | During or subsequent to this tax year, but before the filing of this return, did the corporation dispose of more than 65% (by value) of its assets in a taxable, non-taxable, or tax deferred transaction? . . . . . . . . . . . . . . . . | | ✓ |
| 18 | Did the corporation receive assets in a section 351 transfer in which any of the transferred assets had a fair market basis or fair market value of more than $1 million? . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| 19 | During the corporation's tax year, did the corporation make any payments that would require it to file Forms 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474) of the Code? . . . . . . | | ✓ |
| 20 | Is the corporation operating on a cooperative basis?. . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| 21 | During the tax year, did the corporation pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| | If "Yes," enter the total amount of the disallowed deductions ▶ $_____ | | |
| 22 | Does the corporation have gross receipts of at least $500 million in any of the 3 preceding tax years? (See sections 59A(e)(2) and (3)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| | If "Yes," complete and attach Form 8991. | | |
| 23 | Did the corporation have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions . . . . . . . . . . . . . . . . . . . . . . . . . | | ✓ |
| 24 | Does the corporation satisfy **one** of the following conditions and the corporation does not own a pass-through entity with current year, or prior year carryover, excess business interest expense? See instructions . . . . . . . . . . . | ✓ | |
| a | The corporation's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year do not exceed $25 million, and the corporation is not a tax shelter, or | | |
| b | The corporation only has business interest expense from (1) an electing real property trade or business, (2) an electing farming business, or (3) certain utility businesses under section 163(j)(7). | | |
| | If "No," complete and attach Form 8990. | | |
| 25 | Is the corporation attaching Form 8996 to certify as a Qualified Opportunity Fund?. . . . . . . . . . . . . | | ✓ |
| | If "Yes," enter amount from Form 8996, line 13 . . . . . ▶ $ | | |

Form **1120** (2018)

Form 1120 (2018)

Page **6**

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | Assets | (a) | (b) | (c) | (d) |
| 1 | Cash | | 15,005 | | 18,104 |
| 2a | Trade notes and accounts receivable | 203,450 | | | |
| b | Less allowance for bad debts | ( ) | 203,450 | ( ) | 246,793 |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | ( ) | | ( ) | |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach statement) | | | | |
| 15 | Total assets | | 218,455 | | 264,897 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | 5,116 | | 3,880 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach statement) | | | | |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock:  a Preferred stock | | | | |
| | b Common stock | | 5,000 | | 5,000 |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings—Appropriated (attach statement) | | | | |
| 25 | Retained earnings—Unappropriated | | 208,339 | | 256,017 |
| 26 | Adjustments to shareholders' equity (attach statement) | | | | |
| 27 | Less cost of treasury stock | | ( ) | | ( ) |
| 28 | Total liabilities and shareholders' equity | | 218,455 | | 264,897 |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return | | |
|---|---|---|---|

**Note:** The corporation may be required to file Schedule M-3. See instructions.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 47,678 | 7 | Income recorded on books this year not included on this return (itemize): | |
| 2 | Federal income tax per books | | | Tax-exempt interest $ _____ | |
| 3 | Excess of capital losses over capital gains | | | | |
| 4 | Income subject to tax not recorded on books this year (itemize): | | | _____ | |
| | _____ | | 8 | Deductions on this return not charged against book income this year (itemize): | |
| 5 | Expenses recorded on books this year not deducted on this return (itemize): | | a | Depreciation . $ _____ | |
| a | Depreciation . $ _____ | | b | Charitable contributions $ _____ | |
| b | Charitable contributions . $ _____ | | | _____ | |
| c | Travel and entertainment . $ _____ | | 9 | Add lines 7 and 8 | |
| | _____ | | 10 | Income (page 1, line 28)—line 6 less line 9 | 47,678 |
| 6 | Add lines 1 through 5 | 47,678 | | | |

| Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L) | | |
|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 208,339 | 5 | Distributions: a Cash | |
| 2 | Net income (loss) per books | 47,678 | | b Stock | |
| 3 | Other increases (itemize): | | | c Property | |
| | _____ | | 6 | Other decreases (itemize): _____ | |
| | _____ | | 7 | Add lines 5 and 6 | 0 |
| 4 | Add lines 1, 2, and 3 | 256,017 | 8 | Balance at end of year (line 4 less line 7) | 256,017 |

Form **1120** (2018)

| Form **1125-E** | **Compensation of Officers** | OMB No. 1545-0123 |
|---|---|---|

(Rev. October 2016)

▶ Attach to Form 1120, 1120-C, 1120-F, 1120-REIT, 1120-RIC, or 1120S.
▶ Information about Form 1125-E and its separate instructions is at *www.irs.gov/form1125e*.

Department of the Treasury
Internal Revenue Service

| Name | Employer Identification number |
|---|---|
| VANTAGE POINT APPAREL SOFTWARE, INC. | ▇8180 |

**Note:** Complete Form 1125-E only if total receipts are $500,000 or more. See instructions for definition of total receipts.

| (a) Name of officer | (b) Social security number (see instructions) | (c) Percent of time devoted to business | Percent of stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| 1 Lonnie M Tee | ▇8219 | 100 % | 100 % | 100 % | 126,600 |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |

2  Total compensation of officers . . . . . . . . . . . . . . . . . . . . . . **2**  126,600

3  Compensation of officers claimed on Form 1125-A or elsewhere on return . . . . . . . . **3**

4  Subtract line 3 from line 2. Enter the result here and on Form 1120, page 1, line 12 or the appropriate line of your tax return . . . . . . . . . . . . . . . . . . . . . . **4**  126,600

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 55989C    Form **1125-E** (Rev. 10-2016)

VANTAGE POINT APPAREL SOFTWARE, INC.

█████ 3180

2018 FORM 1120 – LINE 26 – OTHER DEDUCTIONS

| | |
|---|---|
| Travel, meals, mileage, and entertainment | $762 |
| Bank charges | $1,190 |
| Dues and subscriptions | $35 |
| Office liability insurances | $1,080 |
| Office supplies and postage | $905 |
| Equipment expense | $3,020 |
| Telephones (land-lines and wireless) | $15,512 |
| Health insurance | $51,608 |
| Advertising | $490 |
| Total | $74,602 |

Form **1120**

Department of the Treasury
Internal Revenue Service

# U.S. Corporation Income Tax Return

For calendar year 2017 or tax year beginning _____ 2017, ending _____, 20 _____

▶ Go to *www.irs.gov/Form1120* for instructions and the latest information.

OMB No. 1545-0123

**2017**

| A Check if: | | | | | |
|---|---|---|---|---|---|
| 1a Consolidated return (attach Form 851) ☐ | **TYPE OR PRINT** | **Name** VANTAGE POINT APPAREL SOFTWARE, INC. | | **B Employer identification number** ██████8180 | |
| b Life/nonlife consolidated return . . ☐ | | Number, street, and room or suite no. If a P.O. box, see instructions. 12377 LEWIS ST., SUITE #103 | | **C Date incorporated** 7/1/2003 | |
| 2 Personal holding co. (attach Sch. PH) . ☐ | | City or town, state, or province, country, and ZIP or foreign postal code GARDEN GROVE, CA 92840 | | **D Total assets** (see instructions) $ 218,455 | |
| 3 Personal service corp. (see instructions) . ☐ | | | | | |

4 Schedule M-3 attached ☐    E Check if: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change

**Income**

| | | | | |
|---|---|---|---|---|
| 1a | Gross receipts or sales . . . . . . . . . . . . . | 1a | 910,012 | |
| b | Returns and allowances . . . . . . . . . . . . | 1b | 105,198 | |
| c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . | | | 1c | 804,814 |
| 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . | | | 2 | 0 |
| 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . | | | 3 | 804,814 |
| 4 | Dividends (Schedule C, line 19) . . . . . . . . . . . . | | | 4 | 0 |
| 5 | Interest . . . . . . . . . . . . . . . . . . | | | 5 | 0 |
| 6 | Gross rents . . . . . . . . . . . . . . . . | | | 6 | 0 |
| 7 | Gross royalties . . . . . . . . . . . . . . . . | | | 7 | 0 |
| 8 | Capital gain net income (attach Schedule D (Form 1120)) . . . . | | | 8 | 0 |
| 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . | | | 9 | 0 |
| 10 | Other income (see instructions—attach statement) . . . . . . | | | 10 | 0 |
| 11 | **Total income.** Add lines 3 through 10 . . . . . . . . . ▶ | | | 11 | 804,814 |

**Deductions** (See instructions for limitations on deductions.)

| | | | |
|---|---|---|---|
| 12 | Compensation of officers (see instructions—attach Form 1125-E) . . . . . ▶ | 12 | 133,700 |
| 13 | Salaries and wages (less employment credits) . . . . . . . . . . | 13 | 358,847 |
| 14 | Repairs and maintenance . . . . . . . . . . . . . . . | 14 | 2,800 |
| 15 | Bad debts . . . . . . . . . . . . . . . . . . . | 15 | 0 |
| 16 | Rents . . . . . . . . . . . . . . . . . . . . | 16 | 39,415 |
| 17 | Taxes and licenses . . . . . . . . . . . . . . . . | 17 | 38,259 |
| 18 | Interest . . . . . . . . . . . . . . . . . . . | 18 | 0 |
| 19 | Charitable contributions . . . . . . . . . . . . . . . | 19 | 0 |
| 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . | 20 | 0 |
| 21 | Depletion . . . . . . . . . . . . . . . . . . . | 21 | 0 |
| 22 | Advertising . . . . . . . . . . . . . . . . . . | 22 | 0 |
| 23 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . | 23 | 0 |
| 24 | Employee benefit programs . . . . . . . . . . . . . . | 24 | 4,350 |
| 25 | Domestic production activities deduction (attach Form 8903) . . . . . . | 25 | 0 |
| 26 | Other deductions (attach statement) . . . . . . . . . . . . | 26 | 85,218 |
| 27 | **Total deductions.** Add lines 12 through 26 . . . . . . . . . ▶ | 27 | 662,589 |
| 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11. | 28 | 142,225 |
| 29a | Net operating loss deduction (see instructions) . . . . . | 29a | |
| b | Special deductions (Schedule C, line 20) . . . . . . | 29b | |
| c | Add lines 29a and 29b . . . . . . . . . . . . . . . | 29c | 0 |

**Tax, Refundable Credits, and Payments**

| | | | |
|---|---|---|---|
| 30 | **Taxable income.** Subtract line 29c from line 28. See instructions . . . . | 30 | 142,225 |
| 31 | Total tax (Schedule J, Part I, line 11) . . . . . . . . . . . | 31 | 38,718 |
| 32 | Total payments and refundable credits (Schedule J, Part II, line 21) . . . | 32 | 1,856 |
| 33 | Estimated tax penalty. See instructions. Check if Form 2220 is attached . . ▶ ☐ | 33 | |
| 34 | Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed | 34 | 36,862 |
| 35 | Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid . . . | 35 | |
| 36 | Enter amount from line 35 you want: Credited to 2018 estimated tax ▶ _____ Refunded ▶ | 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ *[signature]*  Signature of officer    18-15-2018  Date    ▶ President  Title

May the IRS discuss this return with the preparer shown below? See instructions. ☐ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 11450Q    Form **1120** (2017)

Form 1120 (2017)                                                                                                    Page **2**

| Schedule C | Dividends and Special Deductions (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) × (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations | | see instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries | | 100 | |
| 9 | **Total.** Add lines 1 through 8. See instructions for limitation | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from affiliated group members | | 100 | |
| 12 | Dividends from certain FSCs | | 100 | |
| 13 | Dividends from foreign corporations not included on line 3, 6, 7, 8, 11, or 12 | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | | | |
| 15 | Foreign dividend gross-up | | | |
| 16 | IC-DISC and former DISC dividends not included on line 1, 2, or 3 | | | |
| 17 | Other dividends | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 19 | **Total dividends.** Add lines 1 through 17. Enter here and on page 1, line 4  ▶ | | | |
| 20 | **Total special deductions.** Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b  ▶ | | | |

Form **1120** (2017)

Form 1120 (2017)                                                                                        Page **3**

| Schedule J | Tax Computation and Payment (see instructions) | | |
|---|---|---|---|

**Part I–Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)). See instructions ▶ ☐ | | |
| 2 | Income tax. Check if a qualified personal service corporation. See instructions . . . . . . . . ▶ ☐ | 2 | 38,718 |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . | 3 | 0 |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | 38,718 |
| 5a | Foreign tax credit (attach Form 1118) . . . . . . . . | 5a | |
| b | Credit from Form 8834 (see instructions) . . . . . . . | 5b | |
| c | General business credit (attach Form 3800) . . . . . . | 5c | |
| d | Credit for prior year minimum tax (attach Form 8827) . . . | 5d | |
| e | Bond credits from Form 8912 . . . . . . . . . . . | 5e | |
| 6 | **Total credits.** Add lines 5a through 5e . . . . . . . . . . . . . . . . . . . | 6 | 0 |
| 7 | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . | 7 | 38,718 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . | 8 | 0 |
| 9a | Recapture of investment credit (attach Form 4255) . . . . | 9a | |
| b | Recapture of low-income housing credit (attach Form 8611) . | 9b | |
| c | Interest due under the look-back method—completed long-term contracts (attach Form 8697) . | 9c | |
| d | Interest due under the look-back method—income forecast method (attach Form 8866) . . . . . . . . . . . . . . . . . | 9d | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) | 9e | |
| f | Other (see instructions—attach statement) . . . . . . | 9f | |
| 10 | **Total.** Add lines 9a through 9f . . . . . . . . . . . . . . . . . . . . . | 10 | 0 |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 . . . . . . . . . | 11 | 38,718 |

**Part II–Payments and Refundable Credits**

| | | | |
|---|---|---|---|
| 12 | 2016 overpayment credited to 2017 . . . . . . . . . . . . . . . . . . . . | 12 | 1,856 |
| 13 | 2017 estimated tax payments . . . . . . . . . . . . . . . . . . . . . | 13 | 0 |
| 14 | 2017 refund applied for on Form 4466 . . . . . . . . . . . . . . . . . . . | 14 ( | 0 ) |
| 15 | Combine lines 12, 13, and 14 . . . . . . . . . . . . . . . . . . . . . | 15 | 1,856 |
| 16 | Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . . . . . | 16 | 0 |
| 17 | Withholding (see instructions) . . . . . . . . . . . . . . . . . . . . . | 17 | 0 |
| 18 | **Total payments.** Add lines 15, 16, and 17 . . . . . . . . . . . . . . . . . | 18 | 1,856 |
| 19 | Refundable credits from: | | |
| a | Form 2439 . . . . . . . . . . . . . . . . | 19a | |
| b | Form 4136 . . . . . . . . . . . . . . . . | 19b | |
| c | Form 8827, line 8c . . . . . . . . . . . . . | 19c | |
| d | Other (attach statement—see instructions) . . . . . . | 19d | |
| 20 | **Total credits.** Add lines 19a through 19d . . . . . . . . . . . . . . . . . . | 20 | 0 |
| 21 | **Total payments and credits.** Add lines 18 and 20. Enter here and on page 1, line 32 . . . . | 21 | 1,856 |

| Schedule K | Other Information (see instructions) | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Check accounting method: a ☑ Cash   b ☐ Accrual   c ☐ Other (specify) ▶ _____ | | | |
| 2 | See the instructions and enter the: | | | |
| a | Business activity code no. ▶ _____ 541511 | | | |
| b | Business activity ▶ COMPUTER SOFTWARE | | | |
| c | Product or service ▶ COMPUTER PROGRAMMING | | | |
| 3 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . | | | ✓ |
| | If "Yes," enter name and EIN of the parent corporation ▶ _____ | | | |
| 4 | At the end of the tax year: | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) | | | ✓ |
| b | Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part II of Schedule G (Form 1120) (attach Schedule G) | | | ✓ |

Form **1120** (2017)

Form 1120 (2017)

Page **4**

| **Schedule K** | **Other Information** *(continued from page 3)* | | | Yes | No |
|---|---|---|---|---|---|

**5** At the end of the tax year, did the corporation:

**a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on Form 851, Affiliations Schedule? For rules of constructive ownership, see instructions.
If "Yes," complete (i) through (iv) below.

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions.
If "Yes," complete (i) through (iv) below.

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**6** During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? See sections 301 and 316 . . . . . . . . . ✓
If "Yes," file **Form 5452**, Corporate Report of Nondividend Distributions. See the instructions for Form 5452.
If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary.

**7** At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of the total voting power of all classes of the corporation's stock entitled to vote or at least 25% of the total value of all classes of the corporation's stock?
For rules of attribution, see section 318. If "Yes," enter:
(a) Percentage owned ▶ _____ and (b) Owner's country ▶ _____
(c) The corporation may have to file **Form 5472**, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached ▶ _____

**8** Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . ▶ ☐
If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments.

**9** Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____

**10** Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ _____

**11** If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here . . . . ▶ ☐
If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid.

**12** Enter the available NOL carryover from prior tax years (do not reduce it by any deduction reported on page 1, line 29a.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

**13** Are the corporation's total receipts (page 1, line 1a, plus lines 4 through 10) for the tax year and its total assets at the end of the tax year less than $250,000? . . . . . . . . . . . . . . . . . . . . . . . . . . . ✓
If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year ▶ $ _____

**14** Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement? See instructions . . . ✓
If "Yes," complete and attach Schedule UTP.

**15a** Did the corporation make any payments in 2017 that would require it to file Form(s) 1099? . . . . . . . . ✓
**b** If "Yes," did or will the corporation file required Forms 1099? . . . . . . . . . . . . . . . . ✓

**16** During this tax year, did the corporation have an 80% or more change in ownership, including a change due to redemption of its own stock? ✓

**17** During or subsequent to this tax year, but before the filing of this return, did the corporation dispose of more than 65% (by value) of its assets in a taxable, non-taxable, or tax deferred transaction? . . . . . . . . . . . . . . . ✓

**18** Did the corporation receive assets in a section 351 transfer in which any of the transferred assets had a fair market basis or fair market value of more than $1 million? . . . . . . . . . . . . . . . . . . . . . . ✓

**19** During the corporation's tax year, did the corporation make any payments that would require it to file Forms 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474) of the Code? . . . . . ✓

Form **1120** (2017)

Form 1120 (2017)                                                                             **Page 5**

## Schedule L — Balance Sheets per Books

| Assets | | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 2,022 | | 15,005 |
| 2a | Trade notes and accounts receivable | 215,951 | | 203,450 | |
| b | Less allowance for bad debts | ( ) | 215,951 | ( ) | 203,450 |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | ( ) | | ( ) | |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach statement) | | | | |
| 15 | Total assets | | 217,973 | | 218,455 |
| **Liabilities and Shareholders' Equity** | | | | | |
| 16 | Accounts payable | | 4,015 | | 5,116 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach statement) | | | | |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock: a Preferred stock | | | | |
| | b Common stock | | 5,000 | | 5,000 |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings—Appropriated (attach statement) | | | | |
| 25 | Retained earnings—Unappropriated | | 208,958 | | 208,339 |
| 26 | Adjustments to shareholders' equity (attach statement) | | | | |
| 27 | Less cost of treasury stock | | ( ) | | ( ) |
| 28 | Total liabilities and shareholders' equity | | 217,973 | | 218,455 |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income per Return

**Note:** The corporation may be required to file Schedule M-3. See instructions.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 142,225 | 7 | Income recorded on books this year not included on this return (itemize): Tax-exempt interest $ _____ | |
| 2 | Federal income tax per books | | | | |
| 3 | Excess of capital losses over capital gains | | | | |
| 4 | Income subject to tax not recorded on books this year (itemize): _____ | | 8 | Deductions on this return not charged against book income this year (itemize): | |
| | | | a | Depreciation $ _____ | |
| 5 | Expenses recorded on books this year not deducted on this return (itemize): | | b | Charitable contributions $ _____ | |
| a | Depreciation $ _____ | | | | |
| b | Charitable contributions $ _____ | | 9 | Add lines 7 and 8 | |
| c | Travel and entertainment $ _____ | | | | |
| 6 | Add lines 1 through 5 | 142,225 | 10 | Income (page 1, line 28)—line 6 less line 9 | 142,225 |

## Schedule M-2 — Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 208,958 | 5 | Distributions: a Cash | |
| 2 | Net income (loss) per books | 142,225 | | b Stock | |
| 3 | Other increases (itemize): _____ | | | c Property | |
| | _____ | | 6 | Other decreases (itemize): _____ | 142,844 |
| | | | 7 | Add lines 5 and 6 | 142,844 |
| 4 | Add lines 1, 2, and 3 | 351,183 | 8 | Balance at end of year (line 4 less line 7) | 208,339 |

Form **1120** (2017)

Form **1125-E**
(Rev. October 2016)
Department of the Treasury
Internal Revenue Service

**Compensation of Officers**

▶ Attach to Form 1120, 1120-C, 1120-F, 1120-REIT, 1120-RIC, or 1120S.
▶ Information about Form 1125-E and its separate instructions is at *www.irs.gov/form1125e.*

OMB No. 1545-0123

Name

VANTAGE POINT APPAREL SOFTWARE, INC.

Employer identification number

█3180

**Note:** Complete Form 1125-E only if total receipts are $500,000 or more. See instructions for definition of total receipts.

| (a) Name of officer | (b) Social security number (see instructions) | (c) Percent of time devoted to business | Percent of stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| 1 Lonnie Michael Tee | █3219 | 100 % | 100 % | 100 % | 133,700 |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |

| | | |
|---|---|---|
| 2 Total compensation of officers . . . . . . . . . . . . . . . . . | 2 | 133,700 |
| 3 Compensation of officers claimed on Form 1125-A or elsewhere on return . . . . . . . . | 3 | |
| 4 Subtract line 3 from line 2. Enter the result here and on Form 1120, page 1, line 12 or the appropriate line of your tax return . . . . . . . . . . . . . . . . . . | 4 | 133,700 |

For Paperwork Reduction Act Notice, see separate instructions.

Cat. No. 55989C

Form **1125-E** (Rev. 10-2016)

VANTAGE POINT APPAREL SOFTWARE, INC.

3180

2017 FORM 1120 – LINE 26 – OTHER DEDUCTIONS

| | |
|---|---|
| Travel, meals, mileage, and entertainment | $925 |
| Bank charges | $1,314 |
| Dues and subscriptions | $35 |
| Office liability insurances | $1,080 |
| Office supplies and postage | $1,801 |
| Equipment expense | $5,075 |
| Telephones (land-lines and wireless) | $14,801 |
| Health insurance | $55,930 |
| Advertising | $4,257 |
| **Total** | **$85,218** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

EXHIBIT E:

Details on each Class with Class Member and claim amount

# Chapter 11 Classified Claims- Creditors, Amounts, Classification

## Chapter 11 Plan CLASS 1

| Creditor | Claim Amount |
|---|---|
| Internal Revenue Service | $106,415.00 |
| **TOTAL Claims this Class:** | **$106,415.00** |

## Chapter 11 Plan CLASS 3

| Creditor | Claim Amount |
|---|---|
| Employment Development Department | $95,249.85 |
| **TOTAL Claims this Class:** | **$95,249.85** |

## Chapter 11 Plan CLASS 4

| Creditor | Claim Amount |
|---|---|
| AP-Cityview LLC | $12,285.33 |
| Franchise Tax Board Bankruptcy Section, MS: A-340 | $430.17 |
| Internal Revenue Service | $911,741.36 |
| Law Offices of A. Lavar Taylor | $12,099.70 |
| South Coast Computers | $2,000.00 |
| **TOTAL Claims this Class:** | **$938,556.56** |

| Grand Total All Classified Claims | $1,140,221.41 |
|---|---|

1

2

3    EXHIBIT F:

4
Amortization of Class 2
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## IRS 507 Tax Claim AMORTIZATION SCHEDULE

**ENTER VALUES**

| | |
|---|---|
| Loan amount | $453,632.12 |
| Annual interest rate | 5.00% |
| Loan period in years | 5 |
| Number of payments per year | 12 |
| Start date of loan | 6/1/2021 |
| | |
| Optional extra payments | $0.00 |

**LOAN SUMMARY**

| | |
|---|---|
| Scheduled payment | $8,560.60 |
| Scheduled number of payments | 60 |
| Actual number of payments | 52 |
| Total early payments | $73,596.00 |
| Total interest | $62,425.96 |

**LENDER NAME**     IRS

| PMT NO | PAYMENT DATE | BEGINNING BALANCE | TOTAL PAYMENT | PRINCIPAL | INTEREST | ENDING BALANCE | CUMULATIVE INTEREST |
|---|---|---|---|---|---|---|---|
| 1 | 6/1/2021 | $453,632.12 | $6,000.60 | $4,110.46 | $1,890.13 | $449,521.66 | $1,890.13 |
| 2 | 7/1/2021 | $449,521.66 | $6,000.60 | $4,127.59 | $1,873.01 | $445,394.07 | $3,763.14 |
| 3 | 8/1/2021 | $445,394.07 | $6,000.60 | $4,144.79 | $1,855.81 | $441,249.28 | $5,618.95 |
| 4 | 9/1/2021 | $441,249.28 | $6,000.60 | $4,162.06 | $1,838.54 | $437,087.22 | $7,457.49 |
| 5 | 10/1/2021 | $437,087.22 | $6,000.60 | $4,179.40 | $1,821.20 | $432,907.82 | $9,278.68 |
| 6 | 11/1/2021 | $432,907.82 | $6,000.60 | $4,196.82 | $1,803.78 | $428,711.00 | $11,082.47 |
| 7 | 12/1/2021 | $428,711.00 | $6,000.60 | $4,214.30 | $1,786.30 | $424,496.70 | $12,868.76 |
| 8 | 1/1/2022 | $424,496.70 | $6,000.60 | $4,231.86 | $1,768.74 | $420,264.84 | $14,637.50 |
| 9 | 2/1/2022 | $420,264.84 | $6,000.60 | $4,249.49 | $1,751.10 | $416,015.34 | $16,388.60 |
| 10 | 3/1/2022 | $416,015.34 | $6,000.60 | $4,267.20 | $1,733.40 | $411,748.14 | $18,122.00 |
| 11 | 4/1/2022 | $411,748.14 | $6,000.60 | $4,284.98 | $1,715.62 | $407,463.16 | $19,837.62 |
| 12 | 5/1/2022 | $407,463.16 | $6,000.60 | $4,302.83 | $1,697.76 | $403,160.33 | $21,535.38 |
| 13 | 6/1/2022 | $403,160.33 | $7,291.60 | $5,611.76 | $1,679.83 | $397,548.56 | $23,215.22 |
| 14 | 7/1/2022 | $397,548.56 | $7,291.60 | $5,635.15 | $1,656.45 | $391,913.42 | $24,871.67 |
| 15 | 8/1/2022 | $391,913.42 | $7,291.60 | $5,658.63 | $1,632.97 | $386,254.79 | $26,504.64 |
| 16 | 9/1/2022 | $386,254.79 | $7,291.60 | $5,682.20 | $1,609.39 | $380,572.59 | $28,114.04 |
| 17 | 10/1/2022 | $380,572.59 | $7,291.60 | $5,705.88 | $1,585.72 | $374,866.71 | $29,699.75 |
| 18 | 11/1/2022 | $374,866.71 | $7,291.60 | $5,729.65 | $1,561.94 | $369,137.06 | $31,261.70 |
| 19 | 12/1/2022 | $369,137.06 | $7,291.60 | $5,753.53 | $1,538.07 | $363,383.53 | $32,799.77 |
| 20 | 1/1/2023 | $363,383.53 | $7,291.60 | $5,777.50 | $1,514.10 | $357,606.03 | $34,313.87 |
| 21 | 2/1/2023 | $357,606.03 | $7,291.60 | $5,801.57 | $1,490.03 | $351,804.46 | $35,803.89 |
| 22 | 3/1/2023 | $351,804.46 | $7,291.60 | $5,825.75 | $1,465.85 | $345,978.72 | $37,269.75 |
| 23 | 4/1/2023 | $345,978.72 | $7,291.60 | $5,850.02 | $1,441.58 | $340,128.70 | $38,711.32 |
| 24 | 5/1/2023 | $340,128.70 | $7,291.60 | $5,874.39 | $1,417.20 | $334,254.30 | $40,128.53 |
| 25 | 6/1/2023 | $334,254.30 | $10,416.60 | $9,023.87 | $1,392.73 | $325,230.43 | $41,521.25 |
| 26 | 7/1/2023 | $325,230.43 | $10,416.60 | $9,061.47 | $1,355.13 | $316,168.96 | $42,876.38 |
| 27 | 8/1/2023 | $316,168.96 | $10,416.60 | $9,099.23 | $1,317.37 | $307,069.73 | $44,193.75 |
| 28 | 9/1/2023 | $307,069.73 | $10,416.60 | $9,137.14 | $1,279.46 | $297,932.59 | $45,473.21 |
| 29 | 10/1/2023 | $297,932.59 | $10,416.60 | $9,175.21 | $1,241.39 | $288,757.38 | $46,714.59 |
| 30 | 11/1/2023 | $288,757.38 | $10,416.60 | $9,213.44 | $1,203.16 | $279,543.94 | $47,917.75 |
| 31 | 12/1/2023 | $279,543.94 | $10,416.60 | $9,251.83 | $1,164.77 | $270,292.11 | $49,082.51 |
| 32 | 1/1/2024 | $270,292.11 | $10,416.60 | $9,290.38 | $1,126.22 | $261,001.72 | $50,208.73 |
| 33 | 2/1/2024 | $261,001.72 | $10,416.60 | $9,329.09 | $1,087.51 | $251,672.63 | $51,296.24 |
| 34 | 3/1/2024 | $251,672.63 | $10,416.60 | $9,367.96 | $1,048.64 | $242,304.67 | $52,344.88 |
| 35 | 4/1/2024 | $242,304.67 | $10,416.60 | $9,406.99 | $1,009.60 | $232,897.68 | $53,354.48 |
| 36 | 5/1/2024 | $232,897.68 | $10,416.60 | $9,446.19 | $970.41 | $223,451.49 | $54,324.88 |
| 37 | 6/1/2024 | $223,451.49 | $14,166.60 | $13,235.55 | $931.05 | $210,215.94 | $55,255.93 |

| PMT NO | PAYMENT DATE | BEGINNING BALANCE | | | TOTAL PAYMENT | PRINCIPAL | INTEREST | ENDING BALANCE | CUMULATIVE INTEREST |
|---|---|---|---|---|---|---|---|---|---|
| 38 | 7/1/2024 | $210,215.94 | | | $14,166.60 | $13,290.70 | $875.90 | $196,925.24 | $56,131.83 |
| 39 | 8/1/2024 | $196,925.24 | $8,560.60 | $5,606.00 | $14,166.60 | $13,346.08 | $820.52 | $183,579.16 | $56,952.35 |
| 40 | 9/1/2024 | $183,579.16 | | | $14,166.60 | $13,401.68 | $764.91 | $170,177.48 | $57,717.27 |
| 41 | 10/1/2024 | $170,177.48 | $8,560.60 | $5,606.00 | $14,166.60 | $13,457.52 | $709.07 | $156,719.95 | $58,426.34 |
| 42 | 11/1/2024 | $156,719.95 | | | $14,166.60 | $13,513.60 | $653.00 | $143,206.36 | $59,079.34 |
| 43 | 12/1/2024 | $143,206.36 | $8,560.60 | $5,606.00 | $14,166.60 | $13,569.90 | $596.69 | $129,636.45 | $59,676.03 |
| 44 | 1/1/2025 | $129,636.45 | | | $14,166.60 | $13,626.45 | $540.15 | $116,010.01 | $60,216.19 |
| 45 | 2/1/2025 | $116,010.01 | $8,560.60 | $5,606.00 | $14,166.60 | $13,683.22 | $483.38 | $102,326.78 | $60,699.56 |
| 46 | 3/1/2025 | $102,326.78 | | | $14,166.60 | $13,740.24 | $426.36 | $88,586.55 | $61,125.92 |
| 47 | 4/1/2025 | $88,586.55 | $8,560.60 | $5,606.00 | $14,166.60 | $13,797.49 | $369.11 | $74,789.06 | $61,495.03 |
| 48 | 5/1/2025 | $74,789.06 | | | $14,166.60 | $13,854.98 | $311.62 | $60,934.08 | $61,806.65 |
| 49 | 6/1/2025 | $60,934.08 | $8,560.60 | $7,500.00 | $16,060.60 | $15,806.71 | $253.89 | $45,127.38 | $62,060.55 |
| 50 | 7/1/2025 | $45,127.38 | | | $16,060.60 | $15,872.57 | $188.03 | $29,254.81 | $62,248.58 |
| 51 | 8/1/2025 | $29,254.81 | $8,560.60 | $7,500.00 | $16,060.60 | $15,938.70 | $121.90 | $13,316.11 | $62,370.47 |
| 52 | 9/1/2025 | $13,316.11 | | | $13,316.11 | $13,260.62 | $55.48 | $0.00 | $62,425.96 |

Amortization and Payment Schedule - IRS Secured Claim

# Class 1

## Initial Data

### LOAN DATA

| | | | TABLE DATA | |
|---|---|---|---|---|
| Loan amount: | **$106,415.00** | | Table starts at date: | |
| Annual interest rate: | 5.00% | | or at payment number: | 1 |
| Term in years: | 5.00 | | | |
| Payments per year: | 12 | | | |
| First payment due: | 8/1/2020 | | | |

### PERIODIC PAYMENT

| | | |
|---|---|---|
| Entered payment: | | The table uses the calculated periodic payment amount, |
| Calculated payment: | **$2,008.18** | unless you enter a value for "Entered payment." |

### CALCULATIONS

| | | | | |
|---|---|---|---|---|
| Use payment of: | **$2,008.18** | | Beginning balance at payment 1: | **$106,415.00** |
| 1st payment in table: | 1 | | Cumulative interest prior to payment 1: | **$0.00** |

## Table

| No. | Payment Date | Beginning Balance | Interest | Principal | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|
| 1 | 8/1/2020 | 106,415.00 | 443.40 | 1,564.79 | 104,850.21 | 443.40 |
| 2 | 9/1/2020 | 104,850.21 | 436.88 | 1,571.31 | 103,278.91 | 880.27 |
| 3 | 10/1/2020 | 103,278.91 | 430.33 | 1,577.85 | 101,701.05 | 1,310.60 |
| 4 | 11/1/2020 | 101,701.05 | 423.75 | 1,584.43 | 100,116.63 | 1,734.35 |
| 5 | 12/1/2020 | 100,116.63 | 417.15 | 1,591.03 | 98,525.60 | 2,151.51 |
| 6 | 1/1/2021 | 98,525.60 | 410.52 | 1,597.66 | 96,927.94 | 2,562.03 |
| 7 | 2/1/2021 | 96,927.94 | 403.87 | 1,604.32 | 95,323.62 | 2,965.90 |
| 8 | 3/1/2021 | 95,323.62 | 397.18 | 1,611.00 | 93,712.62 | 3,363.08 |
| 9 | 4/1/2021 | 93,712.62 | 390.47 | 1,617.71 | 92,094.91 | 3,753.55 |
| 10 | 5/1/2021 | 92,094.91 | 383.73 | 1,624.45 | 90,470.45 | 4,137.28 |
| 11 | 6/1/2021 | 90,470.45 | 376.96 | 1,631.22 | 88,839.23 | 4,514.24 |
| 12 | 7/1/2021 | 88,839.23 | 370.16 | 1,638.02 | 87,201.21 | 4,884.40 |
| 13 | 8/1/2021 | 87,201.21 | 363.34 | 1,644.84 | 85,556.37 | 5,247.74 |
| 14 | 9/1/2021 | 85,556.37 | 356.48 | 1,651.70 | 83,904.67 | 5,604.22 |
| 15 | 10/1/2021 | 83,904.67 | 349.60 | 1,658.58 | 82,246.09 | 5,953.83 |
| 16 | 11/1/2021 | 82,246.09 | 342.69 | 1,665.49 | 80,580.60 | 6,296.52 |
| 17 | 12/1/2021 | 80,580.60 | 335.75 | 1,672.43 | 78,908.17 | 6,632.27 |
| 18 | 1/1/2022 | 78,908.17 | 328.78 | 1,679.40 | 77,228.77 | 6,961.06 |
| 19 | 2/1/2022 | 77,228.77 | 321.79 | 1,686.40 | 75,542.38 | 7,282.84 |
| 20 | 3/1/2022 | 75,542.38 | 314.76 | 1,693.42 | 73,848.96 | 7,597.60 |
| 21 | 4/1/2022 | 73,848.96 | 307.70 | 1,700.48 | 72,148.48 | 7,905.31 |
| 22 | 5/1/2022 | 72,148.48 | 300.62 | 1,707.56 | 70,440.91 | 8,205.92 |
| 23 | 6/1/2022 | 70,440.91 | 293.50 | 1,714.68 | 68,726.23 | 8,499.43 |
| 24 | 7/1/2022 | 68,726.23 | 286.36 | 1,721.82 | 67,004.41 | 8,785.79 |
| 25 | 8/1/2022 | 67,004.41 | 279.19 | 1,729.00 | 65,275.41 | 9,064.97 |
| 26 | 9/1/2022 | 65,275.41 | 271.98 | 1,736.20 | 63,539.21 | 9,336.95 |
| 27 | 10/1/2022 | 63,539.21 | 264.75 | 1,743.44 | 61,795.78 | 9,601.70 |
| 28 | 11/1/2022 | 61,795.78 | 257.48 | 1,750.70 | 60,045.08 | 9,859.18 |
| 29 | 12/1/2022 | 60,045.08 | 250.19 | 1,757.99 | 58,287.08 | 10,109.37 |
| 30 | 1/1/2023 | 58,287.08 | 242.86 | 1,765.32 | 56,521.76 | 10,352.23 |
| 31 | 2/1/2023 | 56,521.76 | 235.51 | 1,772.67 | 54,749.09 | 10,587.74 |
| 32 | 3/1/2023 | 54,749.09 | 228.12 | 1,780.06 | 52,969.03 | 10,815.86 |
| 33 | 4/1/2023 | 52,969.03 | 220.70 | 1,787.48 | 51,181.55 | 11,036.57 |
| 34 | 5/1/2023 | 51,181.55 | 213.26 | 1,794.93 | 49,386.62 | 11,249.82 |
| 35 | 6/1/2023 | 49,386.62 | 205.78 | 1,802.40 | 47,584.22 | 11,455.60 |

Amortization and Payment Schedule - IRS Secured Claim

| No. | Payment Date | Beginning Balance | Interest | Principal | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|
| 36 | 7/1/2023 | 47,584.22 | 198.27 | 1,809.91 | 45,774.30 | 11,653.87 |
| 37 | 8/1/2023 | 45,774.30 | 190.73 | 1,817.46 | 43,956.85 | 11,844.59 |
| 38 | 9/1/2023 | 43,956.85 | 183.15 | 1,825.03 | 42,131.82 | 12,027.75 |
| 39 | 10/1/2023 | 42,131.82 | 175.55 | 1,832.63 | 40,299.19 | 12,203.30 |
| 40 | 11/1/2023 | 40,299.19 | 167.91 | 1,840.27 | 38,458.92 | 12,371.21 |
| 41 | 12/1/2023 | 38,458.92 | 160.25 | 1,847.94 | 36,610.98 | 12,531.46 |
| 42 | 1/1/2024 | 36,610.98 | 152.55 | 1,855.64 | 34,755.34 | 12,684.00 |
| 43 | 2/1/2024 | 34,755.34 | 144.81 | 1,863.37 | 32,891.98 | 12,828.82 |
| 44 | 3/1/2024 | 32,891.98 | 137.05 | 1,871.13 | 31,020.84 | 12,965.87 |
| 45 | 4/1/2024 | 31,020.84 | 129.25 | 1,878.93 | 29,141.91 | 13,095.12 |
| 46 | 5/1/2024 | 29,141.91 | 121.42 | 1,886.76 | 27,255.16 | 13,216.54 |
| 47 | 6/1/2024 | 27,255.16 | 113.56 | 1,894.62 | 25,360.54 | 13,330.11 |
| 48 | 7/1/2024 | 25,360.54 | 105.67 | 1,902.51 | 23,458.02 | 13,435.78 |
| 49 | 8/1/2024 | 23,458.02 | 97.74 | 1,910.44 | 21,547.58 | 13,533.52 |
| 50 | 9/1/2024 | 21,547.58 | 89.78 | 1,918.40 | 19,629.18 | 13,623.30 |
| 51 | 10/1/2024 | 19,629.18 | 81.79 | 1,926.39 | 17,702.79 | 13,705.09 |
| 52 | 11/1/2024 | 17,702.79 | 73.76 | 1,934.42 | 15,768.37 | 13,778.85 |
| 53 | 12/1/2024 | 15,768.37 | 65.70 | 1,942.48 | 13,825.89 | 13,844.55 |
| 54 | 1/1/2025 | 13,825.89 | 57.61 | 1,950.57 | 11,875.31 | 13,902.16 |
| 55 | 2/1/2025 | 11,875.31 | 49.48 | 1,958.70 | 9,916.61 | 13,951.64 |
| 56 | 3/1/2025 | 9,916.61 | 41.32 | 1,966.86 | 7,949.75 | 13,992.96 |
| 57 | 4/1/2025 | 7,949.75 | 33.12 | 1,975.06 | 5,974.69 | 14,026.08 |
| 58 | 5/1/2025 | 5,974.69 | 24.89 | 1,983.29 | 3,991.40 | 14,050.98 |
| 59 | 6/1/2025 | 3,991.40 | 16.63 | 1,991.55 | 1,999.85 | 14,067.61 |
| 60 | 7/1/2025 | 1,999.85 | 8.33 | 1,999.85 | 0.00 | 14,075.94 |

1

2

3
       EXHIBIT G:

4
       Sample Chapter 11 Ballot

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**Prepared By:**
**Michael Jones, CA Bar No. 271574**
**M. Jones & Associates, PC**
**505 North Tustin Ave, Suite 105**
**Santa Ana, CA 92705**
**Telephone: (714) 795-2346**
**Facsimile:    (888) 341-5213**
**Email:  mike@mjonesoc.com**

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In Re:

**\*\*\* SAMPLE BALLOT ONLY  \*\*\***

DEBTOR NAME HERE

**\*\* SAMPLE BALLOT ONLY  \*\*\***

Debtors and Debtors-in-Possession.

**In Chapter 11 Proceedings**

**Case No. [Case Number]**

*([Creditor Name])*

**CLASS [Class Specified] BALLOT FOR
ACCEPTING OR REJECTING PLAN OF
REORGANIZATION**

Plan Confirmation Hearing
Date:   [Date of Confirmation]
Time:  [Time of Confirmation]
Crtrm: [Courtroom for Confirmation]

### CLASS [Class Specified] BALLOT FOR ACCEPTING OR REJECTING
### PLAN OF REORGANIZATION

[DEBTOR NAME HERE] have filed a plan of reorganization dated **[Date of Plan] and on the
docket as Item Number [Docket Number]** (the "Plan") for the Debtors in this case. The Chapter
11 Plan provides information to assist you in deciding how to vote your ballot. If you do not have
a copy of the Chapter 11 Plan, you may obtain a copy from M. Jones & Associates, PC, 505 N.
Tustin Ave, Ste 105, Santa Ana, CA 92705. Court approval of the solicitation of the Plan does not
indicate approval of the Plan by the Court.

**You should review the the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class [CLASS Number] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Attn. Michael Jones, M. Jones & Associates, PC, 505 N. Tustin Ave, Ste 105, Santa Ana, CA 92705 on or before [Balloting Deadline], and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

## ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a [Class] claim against the Debtor in the unpaid amount of [Amount of Claim], Creditor [Creditor Name],

(Check one box only)

☐ ACCEPTS THE PLAN                      ☐ REJECTS THE PLAN

☐ CLASS Treatment A

☐ CLASS Treatment B          Alternate treatment selections only on ballots for classes where creditors select their treatment option

Dated: _____      Print or type name: _____

Signature: _____

Title (if corporation or partnership) _____

Address: _____

_____

_____

RETURN THIS BALLOT TO:

**Michael Jones**
**505 N Tustin Ave, Ste 105**
**Santa Ana, CA 92705**

1

2

## EXHIBIT H:

3

Mr. Lonnie Tee's Chapter 13 Plan and Confirmation Order

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address

**Christopher J. Langley 258851**
**Law Offices of Langley & Chang**
**4158 14th St.**
**Riverside, CA 92501**
**951-383-3388 Fax: 877-483-4434**
**258851 CA**
**chris@langleylegal.com**

FOR COURT USE ONLY

☐ *Debtor appearing without attorney*
☑ *Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

List all names (including trade names) used by Debtor within the last 8 years.
In re:

**Lonnie M Tee**

CASE NUMBER: **8:19-bk-14950-ES**

CHAPTER 13

### CHAPTER 13 PLAN
☐ Original
☐ 1st Amended*
☑ 2nd Amended*
☐ _____ Amended*

*list below which sections have been changed:
_____
[FRBP 3015(b); LBR 3015-1]

**11 U.S.C. SECTION 341(a) CREDITORS' MEETING:**
**Date:**     2/04/20
**Time:**     9:00AM
**Address:** RM 1-154, 411 W Fourth St., Santa Ana, CA 92701.

**PLAN CONFIRMATION HEARING: [LBR 3015-1(d)]**
**Date:**     2/25/20
**Time:**     1:30PM
**Address:** Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701.

Debtor(s).

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

## Part 1: PRELIMINARY INFORMATION

**TO DEBTOR (the term "Debtor" includes and refers to both spouses as Debtors in a joint bankruptcy case):** This Chapter 13 Plan (Plan) sets out options that may be appropriate in some cases, but the presence of an option in this Plan does not indicate that the option is appropriate, or permissible, in your situation. A Plan that does not comply with local rules and judicial rulings may not be confirmable. You should read this Plan carefully and discuss it with your attorney if

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page  1                    **F3015-1.01.CHAPTER13.PLAN**

you have one. If you do not have an attorney, you may wish to consult one.

**TO ALL CREDITORS:** This Plan is proposed by Debtor and your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**PLEASE NOTE THAT THE PROVISIONS OF THIS PLAN MAY BE MODIFIED BY ORDER OF THE COURT.**

If you oppose this Plan's treatment of your claim or any provision of this Plan, you or your attorney must file a written objection to confirmation of the Plan at least 14 days before the date set for the hearing on confirmation. However, the amounts listed on a proof of claim for an allowed secured or priority claim control over any contrary amounts listed in the Plan. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See FRBP 3015. In addition, you must file a timely proof of claim in order to be paid under any plan. See LBR 3015-1 and FRBP 3002(a).

Defaults will be cured using the interest rate set forth below in the Plan.

**The following matters may be of particular importance to you:**

*Debtor must check one box on each line to state whether or not this Plan includes each of the following items. If an item is checked as "Not Included," if both boxes are checked, or neither box is checked, the item will be ineffective if set out later as a provision in this Plan.*

     **1.1**  **Valuation of property and avoidance of a lien on property of the bankruptcy estate, set out in Class 3B and/or Section IV (11 U.S.C. § 506(a) and (d)):**
        ☐ **Included**   ☑ **Not included**

     **1.2**  **Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section IV (11 U.S.C. § 522(f)):**
        ☐ **Included**   ☑ **Not included**

     **1.3**  **Less than full payment of a domestic support obligation that has been assigned to a governmental unit, pursuant to 11 U.S.C. §1322(a)(4). This provision requires that payments in Part 2 Section I.A. be for a term of 60 months:**
        ☐ **Included**   ☑ **Not included**

     **1.4**  **Other Nonstandard Plan provisions, set out in Section IV:**
        ☑ **Included**   ☐ **Not included**

**ALL CREDITORS ARE REQUIRED TO FILE A PROOF OF CLAIM IN ORDER TO HAVE AN ALLOWED CLAIM, EXCEPT AS PROVIDED IN FRBP 3002(a).** A Debtor whose Plan is confirmed may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

Regardless of whether this Plan treats a claim as secured or unsecured, any lien securing such claim is not avoided other than as provided by law or order of the court.

**Part 2: PLAN TERMS**

Debtor proposes the following Plan terms and makes the following declarations:

**Section I. PLAN PAYMENT AND LENGTH OF PLAN**

    A.  Monthly Plan Payments will begin 30 days from the date the bankruptcy petition was filed. If the payment due date falls on the 29th, 30th, or 31st day of the month, payment is due on the 1st day of the following month (LBR 3015-1(k)(1)(A)).

        Payments by Debtor of:
        $ **4,350.00**      per month for months **1**    through  **4**    totaling $ **17,400.00**  .

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                Page 2              **F3015-1.01.CHAPTER13.PLAN**

| $ 10,321.00 | per month for months | 5 | through | 18 | totaling $ | 144,494.00 | . |
| $ 14,071.00 | per month for months | 19 | through | 36 | totaling $ | 253,278.00 | . |
| $ 16,879.00 | per month for months | 37 | through | 60 | totaling $ | 405,096.00 | . |

For a total plan length of **60** months totaling $**820,268.00**. ***see miscellaneous provisions under IV. D for an explanation of the steps.**

B.  Nonpriority unsecured claims.

The total amount of estimated non-priority unsecured claims is $**196,683.18**.

1.  Unless otherwise ordered by the court, after Class 1 through Class 4 creditors are paid, allowed nonpriority unsecured claims that are not separately classified (Class 5) will be paid *pro rata* per the option checked below. If both options below are checked, the option providing the largest payment will be effective.

   a. ☑ **"Percentage" plan: 0**% of the total amount of these claims, for an estimated total payment of $**6.00**.

   b. ☐ **"Residual" plan:** The remaining funds, after disbursements have been made to all other creditors provided for in this Plan, estimated to pay a total of $**6.00** and **0**% to claims in Class 5. The amount distributed to Class 5 claims may be less than the amount specified here depending on the amount of secured and priority claims allowed.

2.  Minimum Plan payments. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least the greater of the following amounts:

   (a) the sum of $**0.00**, representing the liquidation value of the estate in a hypothetical Chapter 7 case under 11 U.S.C. § 1325(a)(4), or

   (b) if Debtor has above-median income and otherwise subject to 11 U.S.C. § 1325(b), the sum of $___, representing all disposable income payable for 60 months under the means test.

C.  Income tax refunds. Debtor will provide the Chapter 13 Trustee with a copy of each income tax return filed during the Plan term within 14 days of filing the return and, unless the Plan provides 100% payment to nonpriority unsecured creditors (Class 5), will turn over to the Chapter 13 Trustee all federal and state income tax refunds received for the term of the plan. The Debtor may retain a total of $500 of the sum of the federal and state tax refunds for each tax year. Income tax refunds received by the debtor and turned over to the Chapter 13 Trustee or directly turned over to the Chapter 13 Trustee by the taxing authorities do not decrease the total amount of payments stated in Section I.A., above. The refunds are pledged to the plan in addition to the amounts stated in Section I.A. and can be used by the Chapter 13 Trustee to increase the percentage paid to general unsecured creditors without further order of the Bankruptcy Court.

D.  In the event that secured creditor(s) file a Notice of Postpetition Fees and Costs pursuant to FRBP 3002.1(c), the Chapter 13 Trustee is authorized, but not required, to commence paying those charges 90 days after that notice is filed, unless within that time the Debtor contests those charges by filing a motion to determine payment under FRBP3002.1(e) or agrees to pay those charges by filing a motion to modify this Plan.

E.  Debtor must make preconfirmation adequate protection payments for any creditor that holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in this Plan. Debtor must make preconfirmation adequate protection payments and preconfirmation lease payments to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| -NONE- | | | |

Each adequate protection payment or preconfirmation lease payment will accrue beginning on the 30th day from the date of filing of the case. The Chapter 13 Trustee must deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured creditor(s) at the next disbursement or as soon as

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                      Page 3                                      **F3015-1.01.CHAPTER13.PLAN**

practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will collect his or her statutory fee on all receipts made for preconfirmation adequate protection payments or preconfirmation lease payments.

F.   Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

G.   The Chapter 13 Trustee is authorized to disburse funds after the date the Plan confirmation is announced in open court.

H.   Debtor must file timely all postpetition tax returns and pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities.

I.   Debtor must pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the bankruptcy petition.

J.   If the Plan proposes to avoid a lien of a creditor, the Chapter 13 Trustee must not disburse any payments to that creditor on that lien until the Plan confirmation order is entered.

K.   Debtor must pay all required ongoing property taxes and insurance premiums for all real and personal property that secures claims paid under the Plan.

## Section II. ORDER OF PAYMENT OF CLAIMS; CLASSIFICATION AND TREATMENT OF CLAIMS:

Except as otherwise provided in this Plan, the Chapter 13 Trustee must disburse all available funds for the payment of claims as follows:

### A.   ORDER OF PAYMENT OF CLAIMS:

**1st**   If there are Domestic Support Obligations, the order of priority will be:

   (a) Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

   (b) Administrative expenses (Class 1(a)) until paid in full;

If there are no Domestic Support Obligations, the order of priority will be:

   (a) The Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

   (b) Administrative expenses (Class 1(a)) until paid in full.

**2nd**   Subject to the 1st paragraph, *pro rata* to all secured claims and all priority unsecured claims until paid in full except as otherwise provided in this Plan..

**3rd**   Non-priority unsecured creditors will be paid *pro rata* except as otherwise provided in this Plan. No payment will be made on nonpriority unsecured claims until all the above administrative, secured and priority claims have been paid in full unless otherwise provided in this Plan.

### B.   CLASSIFICATION AND TREATMENT OF CLAIMS:

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                    Page  4                                    **F3015-1.01.CHAPTER13.PLAN**

| CLASS 1 |
|---|

**ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507**

Class 1 claims will be paid in full pro rata. Any treatment that proposes to pay claims in Class 1(a) or 1(b) less than in full must be agreed to in writing by the holder of each such claim and specifically addressed in Section IV.D.

Unless otherwise ordered by the court, the claim amount stated on a proof of claim, and the dollar amount of any allowed administrative expense, controls over any contrary amount listed below.

| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | TOTAL PAYMENT |
|---|---|---|---|
| **a.   Administrative Expenses** | | | |
| (1)   Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | |
| (2)   Attorney's Fees | **$5,000.00** | | **$5,000.00** |
| (3)   Chapter 7 Trustee's Fees | | | |
| (4)   Other | | | |
| (5)   Other | | | |
| **b.   Other Priority Claims** | | | |
| (1)   Internal Revenue Service | **$60,086.17** | **0%** | **$60,086.17** |
| (2)   Franchise Tax Board | **$18,928.81** | **0%** | **$18,928.81** |
| (3)   Domestic Support Obligation | | | |
| (4)   Other: EDD | **$85,404.85** | **0%** | **$85,404.85** |
| (5)   Other | | | |
| (6)   Other | | | |
| **c.   Domestic Support Obligations that have been assigned to a governmental unit and are not to be paid in full in the Plan pursuant to §1322(a)(4) (this provision requires that payments in Part 2 Section I.A. be for a term of 60 months)** | | | |
| *(specify creditor name):* | | | |
| | | | |

☐ See attachment for additional claims in Class 1.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                  Page  5                          **F3015-1.01.CHAPTER13.PLAN**

## CLASS 2

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS DEBTOR'S PRINCIPAL RESIDENCE
### ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

*Check one.*

☐ None. *If "None" is checked, the rest of this form for Class 2 need not be completed.*

☑ Debtor will maintain and make the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. Unless otherwise ordered by the court, these payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure the prepetition arrearages, if any, on a listed claim through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated.

The arrearage amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | POST-PETITION PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| Selene Finance (1) | | $42,603.15 | 0.00% | $10,650.79 | $42,603.15 | ☐ Trustee ☑ Debtor |

☐ See attachment for additional claims in Class 2.

## CLASS 3A

### UNIMPAIRED CLAIMS TO BE PAID DIRECTLY BY DEBTOR

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3A need not be completed.*

☐ Debtor will make regular payments, including any preconfirmation payments, directly to the following creditors in accordance with the terms of the applicable contract (Include Creditor Name and Last 4 Digits of Account Number):

The claims of these creditors are unimpaired under the plan.

☐ See attachment for additional claims in Class 3A.

## CLASS 3B

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE BIFURCATED AND PAID IN FULL DURING THE TERM OF THIS PLAN.

*Check one.*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page *6*                    **F3015-1.01.CHAPTER13.PLAN**

☑ **None.** *If "None" is checked, the rest of this form for Class 3B need not be completed.*

☐ Debtor proposes:

**Bifurcation of Claims - Dollar amounts/lien avoidance.** Except as provided below regarding bifurcation of claims into a secured part and an unsecured part, the claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

(a) Bifurcated claims - secured parts: Debtor proposes that, for the purposes of distributions under this Plan, the dollar amount of secured claims in this Class 3B should be as set forth in the column headed "Secured Claim Amount." For that dollar amount to be binding on the affected parties, either

(i) Debtor must obtain a court order granting a motion fixing the dollar amount of the secured claim and/or avoiding the lien, or

(ii) Debtor must complete and comply with Part 2 Section IV.C., so that the Plan itself serves as such a motion; the "Included" boxes must be checked in Part 1 Paragraphs 1.1 and/or 1.2 (indicating that this Plan includes valuation and lien avoidance, and/or avoidance of a judicial lien or nonpossessory, nonpurchase-money lien in Section IV.C.); and this Plan must be confirmed - if any one of those conditions is not satisfied, then the claim will not be bifurcated into a secured part and an unsecured part pursuant to this sub-paragraph.

(b) Bifurcated claims - unsecured parts: Any allowed claim that exceeds the amount of the secured claim will be treated as a nonpriority unsecured claim in Class 5 below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|---|
| | | | | | | |

☐ See attachment for additional claims in Class 3B.

## CLASS 3C

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE PAID IN FULL DURING THE TERM OF THIS PLAN (WITHOUT BIFURCATION), INCLUDING CURE OF ARREARS, IF APPLICABLE.**

*Check all that apply.*

☐ **None.** *If "None" is checked, the rest of this form for Class 3C need not be completed.*

☑ Debtor proposes to treat the claims listed below as fully secured claims on the terms set forth below. These claims will not be bifurcated. The claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

### IMPAIRED CLAIMS PAID THROUGH THE PLAN BY THE TRUSTEE

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| Franchise Tax Board | | $56,680.32 | 0.00 | $1,205.96 | $56,680.32 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 7                    **F3015-1.01.CHAPTER13.PLAN**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| Internal Revenue Service (2) | | $420,653.66 | 5.00 | $10,005.77 | $470,271.06 |

| CURE AND MAINTAIN CLAIMS |
|---|

☑ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | | | | Trustee Debtor |

☐ See attachment for additional claims in Class 3C.

## CLASS 3D

### SECURED CLAIMS EXCLUDED FROM 11 U.S.C. §506

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3D need not be completed.*

☐ The claims listed below were either:

1. Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle    acquired for the personal use of Debtor, or

2. Incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under this Plan with interest at the rate stated below. The claim amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| | | | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page  8                    **F3015-1.01.CHAPTER13.PLAN**

☐ See attachment for additional claims in Class 3D.

| CLASS 4 |
|---|

### OTHER CLAIMS ON WHICH THE LAST PAYMENT ON A CLAIM IS DUE
### AFTER THE DATE ON WHICH THE FINAL PLAN PAYMENT IS DUE,
### WHICH ARE PROVIDED FOR UNDER 11 U.S.C. §1322(b)(5)

*Check one.*

☑ None. *If "None" is checked, the rest of this form for Class 4 need not be completed.*

☐ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| | | | | | | Trustee Debtor |

☐ See attachment for additional claims in Class 4.

| CLASS 5A |
|---|

### NON-PRIORITY UNSECURED CLAIMS NOT SEPARATELY CLASSIFIED
Allowed nonpriority unsecured claims not separately classified must be paid pursuant to Section I.B. above.

### SEPARATE CLASSIFICATION:
***Check all that apply if Debtor proposes any separate classification of nonpriority unsecured claims.***

☑ **None.** *If "None" is checked, the rest of this form for Class 5 need not be completed.*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                   Page *9*                                   **F3015-1.01.CHAPTER13.PLAN**

## CLASS 5B

☐ **Maintenance of payments.** Debtor will maintain and make the contractual installment payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The contractual installment payments will be disbursed by Debtor.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|
|  |  |  |  |  |

## CLASS 5C

☐ **Other separately classified nonpriority unsecured claims.**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT TO BE PAID ON THE CLAIM | INTEREST RATE | ESTIMATED TOTAL AMOUNT OF PAYMENTS |
|---|---|---|---|---|
|  |  |  |  |  |

☐ See attachment for additional claims in Class 5.

## CLASS 6

### SURRENDER OF COLLATERAL

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 6 need not be completed.*

☐ Debtor elects to surrender to each creditor listed below the collateral that secures the creditor's claim. Debtor requests that upon confirmation of the Plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Class 5 above.

| **Creditor Name:** | **Description:** |
|---|---|
|  |  |

☐ See attachment for additional claims in Class 6.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*    Page 10    **F3015-1.01.CHAPTER13.PLAN**

| CLASS 7 |
|---|

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contracts or unexpired leases not listed below are deemed rejected.

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 7 need not be completed.*

☐ The executory contracts and unexpired leases listed below are treated as specified (*identify the contract or lease at issue and the other party(ies) to the contract or lease*):

**Creditor Name:** _____

**Description:** _____

    ☐ Rejected         ☐ Assumed; cure amount (if any): $ _____
                    to be paid over _____ months

**Creditor Name:** _____

**Description:** _____

    ☐ Rejected         ☐ Assumed; cure amount (if any): $ _____
                    to be paid over _____ months

**Payments to be cured within** _____ **months of filing of the bankruptcy petition. All cure payments will be made through disbursements by the Chapter 13 Trustee.**

☐ See attachment for additional claims in Class 7.

**Section III. PLAN SUMMARY**

| | |
|---|---|
| **CLASS 1a** | $5,000.00 |
| **CLASS 1b** | $164,419.83 |
| **CLASS 1c** | $0.00 |
| **CLASS 2** | $42,603.15 |
| **CLASS 3B** | $0.00 |

| | |
|---|---|
| **CLASS 3C** | $526,951.00 |
| **CLASS 3D** | $0.00 |
| **CLASS 4** | $0.00 |
| **CLASS 5A** | $6.00 |
| **CLASS 5C** | $0.00 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*          Page *11*          **F3015-1.01.CHAPTER13.PLAN**

| **CLASS 7** | $0.00 |
|---|---|
| **SUB-TOTAL** | $738,979.98 |
| **CHAPTER 13 TRUSTEE'S FEE**<br>(Estimated 11% unless advised otherwise) | $81,287.64 |
| TOTAL PAYMENT | $820,268.00 |

## Section IV. NON-STANDARD PLAN PROVISIONS

☑ **None.** *If "None" is checked, the rest of Section IV need not be completed.*

**Pursuant to FRBP 3015(c), Debtor must set forth all nonstandard Plan provisions in this Plan in this separate Section IV of this Plan and must check off the "Included" box or boxes in Paragraphs 1.1, 1.2, 1.3 and/or 1.4 of Part 1 of this Plan. Any nonstandard Plan provision that does not comply with these requirements is <u>ineffective</u>.** A nonstandard Plan provision means any Plan provision not otherwise included in this mandatory Chapter 13 Plan form, or any Plan provision deviating from this form.

**The nonstandard Plan provisions seeking modification of liens and security interests address only those liens and security interests known to Debtor, and known to be subject to avoidance, and all rights are reserved as to any matters not currently known to Debtor.**

☐ A. <u>Debtor's Intent to File Separate Motion to Value Property Subject to Creditor's Lien or Avoid Creditor's Lien [11 U.S.C. § 506(a) and (d)].</u> Debtor will file motion(s) to value real or personal property of the bankruptcy estate and/or to avoid a lien pursuant to 11 U.SC § 506(a) and (d), as specified in **Attachment A**.

☐ B. <u>Debtor's Intent to File Separate Motion to Avoid Creditor's Judicial Lien or Nonpossessory, Nonpurchase Security Interest [11 U.S.C. § 522(f)].</u> Debtor will file a Motion to avoid a judicial lien or nonpossessory, nonpurchase-money security interest, on real or personal property of the bankruptcy estate listed below pursuant to 11 U.SC § 522(f). If the court enters an order avoiding a lien under 11 U.S.C. § 522(f), the Chapter 13 Trustee will not pay any claim filed based on that lien as a secured claim.

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

**Name of Creditor Lienholder/Servicer:** _____

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** _____

_____

☐ See attachment for any additional liens and security interests to be avoided by separate 11 U.S.C. § 522(f) motion.

☐ C. <u>Debtor's Request in this Plan to Modify Creditor's Secured Claim and Lien</u>. Debtor proposes to modify the following secured claims and liens in this Plan without a separate motion or adversary proceeding - this Plan will serve as the motion to value the collateral and/or avoid the liens as proposed below. **To use this option, Debtor must serve this Plan, LBR Form F 3015-1.02.NOTICE.341.LIEN.CONFRM and all related exhibits as instructed in that form. Note: Not all Judges will grant motions to value and/or avoid liens through this Plan. Please consult the specific Judge's Instructions/Procedures on the court's website for more information.**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 12                    **F3015-1.01.CHAPTER13.PLAN**

### DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN

**TO CREDITOR LIENHOLDER/SERVICER** _____

---

☐    Real property collateral (street address and/or legal description or document recording number, including county of recording):

   _____

   (*attach page with legal description of property or document recording number as appropriate*).

☐    Other collateral (*add description such as judgment date, date and place of lien recording, book and page number*):

   _____

☐    11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐    11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under nonbankruptcy law or one of the following:

   (1) discharge under 11 U.S.C. § 1328, or

   (2) Upon completion of all Plan payments.

Value of collateral: ................................................................................................ $ _____

Liens reducing equity (to which subject lien can attach): $ _____ + $ _____ + $ _____ = .. ($ _____ )

Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f)):..................................... ($ _____ )

**Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form Attachment B, C and/or D to this Plan, as applicable. (*Debtor must use and attach a separate Attachment B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.*)**

Amount of remaining secured claim (negative results should be listed as $-0): ............................ $ _____

*Note*: See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

---

☐ See attachment(s) for additional request(s) to modify secured claims and liens by this Plan.

D. **Other Non-Standard Plan Provisions (*use attachment, if necessary*):**

**The basis of the step ups are as follows:**
1) **starting in Month 5 (5/25/2020) wife's net income will be contributed into the plan (post-petition employment) for a $5,800 step.**
2) **starting in month 19 (7/25/2021), when debtor no longer has the child education expenses an additional $3,750 will be contributed to the plan.**
3) **starting in month 37 (1/25/2023), once debtor's spouse starts collection SSI, those funds will be contributed into the plan for a final $2,808 step.**

## V. REVESTING OF PROPERTY

Property of the bankruptcy estate will not revest in Debtor until a discharge is granted or the case is dismissed or

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 13                    **F3015-1.01.CHAPTER13.PLAN**

closed without discharge. Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will not have any further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

**By filing this document, the Attorney for Debtor, or Debtor if not represented by an attorney, also certify(ies) that the wording and order of the provisions in this Plan are identical to those contained in the Central District of California Chapter 13 Plan other than any nonstandard Plan provisions included in Section IV.**

Date:  **April 27, 2020**

/s/Christopher J. Langley
**Christopher J. Langley 258851**
Attorney for Debtor

/s/Lonnie Tee*
**Lonnie M Tee**
Debtor 1

*Consented to by debtor will file wet signature once Debtor can come into office.
Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page *14*                    **F3015-1.01.CHAPTER13.PLAN**

# ATTACHMENT A to Chapter 13 Plan/Confirmation Order
## (11 U.S.C. §§ 506: valuation/lien avoidance by separate motion(s))

☑ **None.** *If "None" is checked, the rest of this Attachment A need non be completed.*

1. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 2nd Lien on 123 Main St.): _____

2. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 3rd Lien on 123 Main St.): _____

3. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 4th Lien on 123 Main St.): _____

4. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 2nd Lien on 456 Broadway): _____

5. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 3rd Lien on 456 Broadway): _____

6. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 4th Lien on 456 Broadway): _____

7. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 2nd Lien on 789 Crest Ave.): _____

8. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 3rd Lien on 789 Crest Ave.): _____

9. **Creditor Lienholder/Servicer:** _____
   **Subject Lien** (*e.g.*, 4th Lien on 789 Crest Ave.): _____

*(Attach additional pages for more liens/provisions.)*

**CERTIFICATION:** I have prepared this attachment (including any additional pages) for use by the Chapter 13 Trustee. I certify under penalty of perjury under the laws of the United States of America that the information provided in this attachment is accurate to the best of my knowledge after reasonable inquiry, and I acknowledge that the Chapter 13 Trustee has no duty to verify the accuracy of that information.

Executed on (date)  __April 27, 2020__

*Printed name:*  __Christopher J. Langley 258851__       *Signature:*  /s/Christopher Langley
☑ Attorney for Debtor or    ☐ Debtor appearing without attorney

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 15                    **F3015-1.01.CHAPTER13.PLAN**

| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Amrane Cohen<br>Chapter 13 Standing Trustee<br>770 The City Drive South<br>Suite 3700<br>Orange, CA 92868<br><br><br><br>*Chapter 13 Trustee* | **FILED & ENTERED**<br><br>**MAY 19 2020**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY duarte    DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re:<br><br>Lonnie M Tee,<br><br><br><br><br><br><br>Debtor(s). | CASE NUMBER: 8:19-bk-14950-ES<br><br>CHAPTER 13<br><br>**ORDER CONFIRMING CHAPTER 13 PLAN**<br><br>DATE:  4/28/20<br>TIME:   1:30 p.m.<br>COURTROOM: 5A<br>ADDRESS: 411 W. 4th St., Santa Ana, CA |
|---|---|

This order pertains to the (*specify original or version of amended plan*) 2nd Amended Chapter 13 Plan (Plan) filed on (*date*) 4/27/2020, docket number 38.

The Plan was served on the creditors pursuant to FRBP 3015.  Debtor* appeared and was examined at a meeting of creditors conducted pursuant to 11 U.S.C. § 341(a).  The court, finding that the Plan with any modification made at the confirmation hearing meets the requirements of 11 U.S.C. §§ 1322 and 1325, orders as follows:

The Plan is confirmed, with the following provisions:

I.    **PLAN PAYMENTS AND LENGTH OF PLAN**

A.    Debtor's Monthly Plan payments will commence on 1/25/2020 and continue on that day of the month for 60 months.  These payments shall be:

Payments by Debtor of $4,350.00 per month for months 1 through 4.

Payments by Debtor of $10,321.00 per month for months 5 through 18.

Payments by Debtor of $14,071.00 per month for months 19 through 36.

☒    Continuation of payment schedule attached.

For a total plan length of 60  months totaling $820,268.00(the Plan base amount), plus tax refunds if required.

---

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*
*\* The term "Debtor" refers to both debtor spouses in a joint bankruptcy case.*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 1                    **F 3015-1.03.ORDER.CNFRM.CH13.PLAN**

B. ☒ This is a Fixed Percentage Plan. Claims in Classes 1 through 4 and 7 will be paid pursuant to the Order of Payments of Claims set forth below. After these payments are completed, nonpriority unsecured claims that are not separately classified (Class 5) will be paid *pro rata* 0% of the total amount of these allowed claims.

C. ☐ This is a Residual Plan. After payments required to be made to all other creditors provided for in this Plan, this is estimated to pay a total of $_____ and _____% to claims in Class 5.

D. Income Tax Refunds

All Debtors will provide to the Chapter 13 Trustee a copy of each income tax return filed during the Plan term within 14 days of filing the return.

    ☒ During the Plan term, Debtor must turn over to the Chapter 13 Trustee all tax refunds in excess of $500.00 (combined federal and state) per year.

    ☐ This is a 100% Plan. Unless the Plan is modified to a lower percentage, Debtor may retain tax refunds.

## II. ORDER OF PAYMENT OF CLAIMS

Unless modified by Part III.E of this Order, the Chapter 13 Trustee must make payments on claims as set forth in Section II.A of the Plan.

## III. OTHER PROVISIONS

A. ☐ Lien Avoidance

    ☐ 1. The Plan provides (in Section IV.A.) that Debtor will request the court to value property or avoid liens of creditors under 11 U.S.C. § 506 by separate motion(s). This court has issued order(s) on such motion(s). The affected liens are identified in **Attachment A**. Unless otherwise ordered by this court, the effective date on which such liens will be avoided is the date of completion of all Plan payments.

    ☐ 2. The Plan utilizes Section IV.C to modify secured claims and liens without a separate motion and serves as the motion to value the real or personal property and avoid liens and security interests of creditors. See **Attachment B** for valuation and avoidance of liens under 11 U.S.C § 506.

    ☐ 3. The Plan utilizes Section IV.C to avoid judicial liens or nonpurchase-money security interests of creditors on real or personal property under 11 U.S.C § 522(f).

        ☐ See **Attachment C** for avoidance of real property judicial liens.

        ☐ See **Attachment D** for avoidance of judicial liens and nonpossessory, nonpurchase-money security interests of creditors on personal property.

B. ☐ Surrender of Collateral and Automatic Stay Termination

The following collateral is surrendered to secured creditors and the automatic stay provisions of 11 U.S.C. § 362(a) are terminated as to the collateral only, and the co-debtor stay under 11 U.S.C. §1301 is terminated in all respects, upon entry of this order.

|   | COLLATERAL | SECURED CREDITOR |
|---|---|---|
| a. |  |  |
| b. |  |  |
| c. |  |  |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 2                    **F 3015-1.03.ORDER.CNFRM.CH13.PLAN**

C. Attorney's Fees

1. ☒  Attorney for Debtor is employed under the Rights and Responsibility Agreement (RARA) and is awarded Base Fees of $6,000.00.  Having received $1,000.00, Attorney for Debtor is entitled to a payment of $5,000.00 from the bankruptcy estate on account of such Base Fees.

2. ☐  Attorney for Debtor is employed on an hourly fee contract.  All fee awards shall be by separate order.

D. The Chapter 13 Trustee is authorized to make payment to creditors holding allowed secured claims based on the Plan.  However, the amounts listed on a proof of claim for an allowed secured claim control over any contrary amounts listed in the Plan as to the current installment payment and arrearage unless otherwise ordered by the court.  Also, any determination in the Plan or by separate motion made under FRBP 3012 about the amount of a secured claim is binding on the creditor holding the claim, even if the holder files a contrary proof of claim, regardless of whether an objection to claim has been filed.  If relief from the automatic stay is ordered as to a secured creditor on certain collateral, then all payments under the Plan to the secured creditor as to that collateral will cease.

E. ☒  The following modifications to the Plan have been agreed to by the Chapter 13 Trustee, and/or a creditor if applicable, and Debtor, or have been ordered by the court at the Plan confirmation hearing:

      • Debtor's counsel and Debtor interlineate to the following modifications of the plan:
      • Creditor Wells Fargo Bank's mortgate arrears of $798.67 are to be paid $798.67 per month for the duration of the plan until paid in full.

F. Revesting Property

      Property of the bankruptcy estate will revest in Debtor after a discharge is granted or, if the case is dismissed or closed without a discharge, in accordance with 11 U.S.C. § 349 and any order of the court. Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Before any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

G. Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

###

Date: May 19, 2020

*Erithe A. Smith*

Erithe Smith
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2019*                                           Page 3                    **F 3015-1.03.ORDER.CNFRM.CH13.PLAN**

**Continuation of payment schedule**

Payments by Debtor of $16,879.00 per month for months 37 through 60.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*April 2019*                                    Page 4                          **F 3015-1.03.ORDER.CNFRM.CH13.PLAN**

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>**Christopher J. Langley 258851**<br>**4158 14th St.**<br>**Riverside, CA 92501**<br>**951-383-3388 Fax: 877-483-4434**<br>State Bar Number: **258851 CA**<br>**chris@slclawoffice.com** | FOR COURT USE ONLY |
| ☐ *Individual appearing without attorney*<br>☑ *Attorney for: Debtor* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>  **Lonnie M Tee**<br><br><br>                                        Debtor(s). | CASE NO.: **8:19-bk-14950-ES**<br><br>CHAPTER: <u>13</u> |
|---|---|
| | **NOTICE OF MOTION UNDER LBR 3015-1(n) AND (w) TO MODIFY PLAN OR SUSPEND PLAN PAYMENTS** |
| | [No hearing required unless requested under LBR 3015-1(w)] |

1.    NOTICE IS GIVEN that the Debtor in the above-captioned case will move this court for an order granting the relief sought in the attached motion. The motion is based upon the grounds set forth in the motion. The motion is made pursuant to LBR 3015-1(n) and (w), which provide that this motion may be granted without a hearing.

2.    **Deadline for Opposition Papers and Request for a Hearing**: Any party objecting to the attached motion must file with the court and serve on the Debtor and the chapter 13 trustee a written objection and request for a hearing on the motion. If you fail to file a written objection within 21 days of the date of service of this notice, plus 3 additional days if you were served by mail or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F), the court may treat such failure as a waiver of your right to oppose the motion and may grant the motion.

Date:    **December 16, 2020**

|  |
|---|
| **/s/ Christopher J. Langley** |
| Signature of Debtor or attorney for Debtor |
| **Christopher J. Langley 258851** |
| Printed name of Debtor or attorney for Debtor |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                              Page 1                    **F 3015-1.05.NOTICE.MODIFY.SUSPEND**

<table>
<tr><td>
Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email address

**Christopher J. Langley 258851**
**Shioda Langley & Chang LLP**
**4158 14th St.**
**Riverside, CA 92501**
**951-383-3388 Fax: 877-483-4434**
California State Bar Number: **258851 CA**
chris@langleylegal.com
</td><td>
FOR COURT USE ONLY
</td></tr>
</table>

☐ *Individual appearing without attorney*
☑ *Attorney for*: Debtor

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re<br>**Lonnie M Tee**<br><br>Debtor(s). | CASE NO.: **8:19-bk-14950-ES**<br>CHAPTER 13 |
|---|---|
| | **MOTION UNDER LBR 3015-1(n) AND (w) TO MODIFY PLAN OR SUSPEND PLAN PAYMENTS**<br><br>[No Hearing Required] |

1. The Debtor hereby moves this court to modify the confirmed Chapter 13 Plan or suspend plan payments, as set forth in detail below.

2. The purpose of this motion is to (***check all that apply***):
   ☑ Cure the delinquency.
   ☐ Address the expiration of the plan.
   ☐ Cure the infeasibility of the plan.
   ☑ Modify the amount of the plan payment, the length of the plan and/or the percentage to be paid to unsecured creditors because of a change in financial circumstances.

3. Terms of original confirmed Chapter 13 plan:
   The Order Confirming Plan was entered on **5/19/2020** .
   Plan payment amount(s): $ **4,350-$16,879** per month.
   Length of plan: **60** months.
   Percentage paid to Class 5 general unsecured creditors: **0** %.

4. There have been **0** previous modification or suspension orders.
   Plan payments have been suspended for **0** months and/or the plan has been extended for **0** months.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

5.  Current plan terms *(complete this section if the confirmed chapter 13 plan has been subject to a previous modification or suspension order)*:
    Plan payment amount(s): $___ per month.
    Length of plan: ___ months.
    Percentage paid to Class 5 general unsecured creditors: ___%.

6.  Proposed modification:
    [✓] Suspend *(indicate number of plan payments)* **3** plan payments. (months 5-7)
    [ ] Extend the term by *(indicate number of months)* __ month(s).
    [ ] Reduce the term by *(indicate number of months)* __ month(s).
    [✓] Increase the plan payment from $___ to $___ from *(date)* _____ to *(date)* _____.
        **from $10,321 to $10,375 from 1/25/2021 to 6/25/2021**
        **from $14,071 to $14,525 from 7/25/2021 to 11/25/2022**
        **from $16,879 to $17,025 from 1/25/2023 to 12/25/2024**

    [✓] Reduce the plan payment from $ **10,321** to $ **4,350** from *(date)* **8/25/2020** to *(date)* **12/25/2020**.

7.  Since the Order Confirming Plan or the last modification or suspension order was entered, the debtor's(s') circumstances have changed in the following respect:

    *Debtor's business services the retail industry and has been negative impacted by Covid-19. Debtor believes that the situation has begun to improve and that he will be able to make reduced payments through the end of the year. Attached as Exhibit 1 is a spreadsheet with the proposed suspension and monthly payments.*

    *File and serve amended schedules I and J (if appropriate) and supporting documentation concerning the basis for this motion including, but not limited to, proof of income.*

8.  If this motion is granted, the last plan payment due would be payable **65** months after the first plan payment was due.

9.  If this motion is granted:
    [✓] There will be no change in the percentage paid to Class 5 general unsecured creditors,
    OR
    [ ] The percentage paid to Class 5 general unsecured creditors will change from __% to __%.

Date:   **December 16, 2020**

/s/Christopher J. Langley
**Christopher J. Langley 258851**
Attorney for Debtor

I declare under penalty of perjury that the following is true and correct.
Date:   **December 16, 2020**

**Lonnie M Tee**
Debtor

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 2                    **F 3015-1.05.MOTION.MODIFY.SUSPEND**

<table>
<tr><td>

Amrane Cohen, Chapter 13 Trustee
Brian D. Wirsching (SBN 189491)
770 The City Drive South, Suite 3700
Orange, CA 92868
Phone: (714) 621-0200  Fax (714) 621-0277
Email: efile@ch13ac.com




Chapter 13 Trustee

</td><td>

FOR COURT USE ONLY

</td></tr>
</table>

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| In re: | CASE NUMBER 8:19-bk-14950-ES |
| | CHAPTER  13 |
| Lonnie M Tee | |
| Debtor(s). | **TRUSTEE'S COMMENTS ON OR OBJECTION** |
| | [No Hearing Required] |

**TRUSTEE'S COMMENTS ON OR OBJECTION TO:**

☒   **DEBTOR'S MOTION TO MODIFY PLAN OR SUSPEND PLAN PAYMENTS**

☐   **DEBTOR'S MOTION FOR AUTHORITY TO INCUR DEBT**

☐   **DEBTOR'S MOTION FOR AUTHORITY TO REFINANCE REAL PROPERTY**

☐   **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY**

☐   **OTHER:**

The undersigned Chapter 13 Trustee, having reviewed Debtor's Motion filed on **12/16/2020** as docket entry number **70**, recommends:

☐   APPROVAL

   ☐ See attached sheet.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                              Page 1              **F 3015-1.13.TRUSTEE.COMMENT.GENRL**

☒    APPROVAL on the following conditions:

By the motion, Debtor seeks to suspend three plan payments, modify the plan payment amounts, and extend the plan term from 60 to 65 months.  The Trustee notes that as Debtor's plan was confirmed May 19, 2020, Debtor is not eligible to extend the plan term beyond 60 months.  11 U.S.C. § 1329(d).  The proposed stream of payments over the 60-month plan term would not pay the plan balance by month 60.  Accordingly, the Trustee could recommend modification on the following alternate terms:

1.    Suspend seven (07) plan payments for the period of June 2020 (month 06) to December 2020 (month 12);

2.    Plan payments to resume January 2021 (month 13) at the amount of $10,375.00;

3.    Plan payment to increase to $14,525.00 effective July 2021 (month 19);

4.    Plan payment to increase to $19,862.00 effective January 2023 and remaining at this amount until the end of the plan term, which is to remain at 60 months;

5.    Net 2019 income tax refunds due into the plan of $1,742 is waived.  However, 2020 net tax refunds over $500 and any such refunds for subsequent years must be paid into the plan while the plan is pending;

6.    Base amount of the plan modified to $828,109.00;

7.    Distribution to Class 5 general unsecured creditors to remain a fixed percentage at 0%;

8.    The Trustee reserves all rights regarding provision of tax returns, tender of refunds, increases in the base, and materiality for plan default;

9.    The Trustee reserves all rights to revisit the modification of the plan in the event the abatement of the COVID-19 emergency; and

10.    All other plan provisions to remain unchanged.

If Movant agrees with the attached conditions and no objection is filed by other parties, Movant is to file a declaration re non-receipt of objection or request for hearing to the motion under LBR 9013-1(o)(3) and lodge an electronic order approving the motion consistent with the foregoing conditions.  If Movant disagrees with the conditions or a party files an objection to the motion, then Movant may either file a voluntary dismissal of the motion or set the motion for hearing under the applicable Local Bankruptcy Rules, using the Court's self-calendaring procedure, and serve notice of the hearing as appropriate.

☐    See attached sheet.


☐    DISAPPROVAL for the following reasons:


☐    See attached sheet.


☐    NO POSITION TAKEN BY THE CHAPTER 13 TRUSTEE


☐    SET FOR HEARING


Dated:  1/4/2021                                    /s/ Brian Wirsching
                                                    Attorney for Amrane Cohen, Chapter 13 Trustee

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<table>
<tr><td>Attorney or Party Name, Address, Telephone & FAX<br>Nos., State Bar No. & Email Address</td><td>FOR COURT USE ONLY</td></tr>
</table>

**Christopher J. Langley (SBN 258851)
Shioda Langley and Chang LLP
4158 Fourteenth Street
Riverside, CA 92501
T: (951) 383-3388
F: (951) 483-4434**

FILED & ENTERED

JAN 13 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY duarte    DEPUTY CLERK

☐ *Debtor appearing without attorney*
☒ *Attorney for: Debtor*
☐ *Chapter 13 trustee*

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - <u>SANTA ANA</u> DIVISION

In re

**Lonnie M Tee**

CASE NO.: 8:19-14950-ES

CHAPTER: 13

**ORDER ON:**
☒ **DEBTOR'S MOTION TO MODIFY PLAN OR SUSPEND PLAN PAYMENTS**
☐ **DEBTOR'S MOTION FOR AUTHORITY TO REFINANCE REAL PROPERTY**
☐ **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY**
☐ **DEBTOR'S MOTION FOR AUTHORITY TO ENTER INTO LOAN MODIFICATION**
☐ **OTHER:**

☒ No hearing held
☐ Hearing held
DATE:
TIME:
COURTROOM:
PLACE:

Debtor(s).

Based on Debtor's motion filed on (*date*) 12/16/2020 as docket entry number 70 and the recommendation of the chapter 13 trustee, it is ordered that Debtor's motion is:

☐ Granted    ☐ Denied

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☒     Granted on the terms set forth in the chapter 13 trustee's comments on or objection to Debtor's motion.

☐     Granted on the following conditions:

☐     Set for hearing on (*date*) _____ at (*time*) _____.

###

Date: January 13, 2021

Erithe Smith
United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
505 N Tustin Ave, Ste 105, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*):
SECOND AMENDED **SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION DATED JANUARY 25, 2021**
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 18 March 2021. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠                   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 18 March 2021 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠                   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (<u>state method</u> <u>for each person or entity served</u>):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 18 March 2021.  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐                   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 18 March 2021 | Michael Jones | /s/ Michael Jones |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

## ECF Service List

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Michael Jones**    mike@mjonesoc.com, 2651971420@filings.docketbird.com
- **Mark M Sharf (TR)**    mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com
- **Najah J Shariff**    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.go

Label Matrix for local noticing
0973-8
Case 8:20-bk-10936-ES
Central District of California
Santa Ana
Thu Mar 18 09:10:59 PDT 2021

United States of America on Behalf of Inter
Attn: Najah Shariff
300 N. Los Angeles Street
Room 7211
Los Angeles, CA 90012-3342

Vantage Point Apparel Software, Inc.
26632 Towne Centre Dr.
Ste 300
Foothill Ranch, CA 92610-2814

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

~~AP-Cityview LLC~~
~~c/o Donald G. Abbey~~
~~12447 Lewis Street, Ste 203~~
~~Garden Grove, CA 92840-6601~~

AP-Cityview LLC
c/o Registered Ageny Donald G. Abbey
12447 LEWIS STREET, SUITE 203
Garden Grove, CA 92840-6601

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

~~Franchise Tax Board Bankruptcy Section, MS:~~
~~P. O. Box 2952~~
~~Sacramento, CA 95812-2952~~

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Law Offices of A. Lavar Taylor
3 Hutton Center Dr., Suite 500
Santa Ana, CA 92707-8711

Law Offices of A. Lavar Taylor, LLP
3 Hutton Centre Drive, Suite 500
Santa Ana, CA 92707-8711

Lonnie Tee
19 Raleigh Court
Trabuco Canyon, CA 92679-4957

South Coast Computers
301 N Rampart St
Orange, CA 92868-1854

The Abbey Company
12447 Lewis St, Ste 203
Garden Grove, CA 92840-6601

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

(p)MARK SHARF
6080 CENTER DRIVE SUITE 600
LOS ANGELES CA 90045-1540

~~Michael Jones~~
~~M Jones & Assoiates, PC~~
~~505 N Tustin Ave Ste 105~~
~~Santa Ana, CA 92705-3735~~

~~Michael Jones~~
~~M. Jones & Associates~~
~~505 North Tustin Ave~~
~~Suite 105~~
~~Santa Ana, CA 92705-3735~~

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Mark M Sharf (TR)
6080 Center Drive #600
Los Angeles, CA 90045

End of Label Matrix
Mailable recipients    18
Bypassed recipients     0
Total                  18